**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| JANE DOE (J.S.H.) an individual,<br>c/o Jenner Law, P.C.<br>3600 Clipper Mill Road, Suite 240<br>Baltimore, Maryland 21211<br><br>*Plaintiff,*<br><br>v.<br><br>CHOICE HOTELS INTERNATIONAL, INC.<br>915 Meeting Street<br>North Bethesda, Maryland 20852<br>(Montgomery County)<br><br>and<br><br>CHOICE HOTELS INTERNATIONAL<br>SERVICES CORP.<br>915 Meeting Street<br>North Bethesda, Maryland 20852<br>(Montgomery County)<br><br>and<br><br>GP4 PROPERTY OWNER, LLC.,<br>4242 Six Forks Road, Suite 920<br>Raleigh, North Carolina 27609<br><br>*Defendants.* | CIVIL ACTION NO. 8:24-cv-1598<br><br>COMPLAINT AND JURY DEMAND |

**PLAINTFF'S COMPLAINT**

Jane Doe (J.S.H.), Plaintiff in the above-styled and numbered cause, files this Complaint against CHOICE HOTELS INTERNATIONAL, INC.; CHOICE HOTELS INTERNATIONAL SERVICE CORP; and GP4 PROPERTY OWNER, LLC as Defendants, and would respectfully show the Court and jury as follows:

## <u>PREAMBLE</u>

1.      Jane Doe (J.S.H.) files this civil lawsuit seeking compensation for the harm she suffered as a result of the sex trafficking she endured in a hotel owned, operated, maintained, and controlled by Defendants and their agents and employees.

2.      Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act through force, fraud, or coercion.[1] Traffickers or 'pimps' use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel victims to engage in commercial sex acts against their will.

3.      Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for pimps and sex buyers.

4.      Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, *et seq.,* has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

5.      In 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who—while not criminally liable under the TVPRA—financially benefit from participation in a venture that they know or *should know* engages in criminal sex trafficking.

6.      Jane Doe (J.S.H.) alleges that Defendants derived financial benefit from facilitating sex trafficking by providing a venue where traffickers could exploit victims, including Jane Doe

---

[1] 18 U.S.C. §1591; 22 U.S.C. § 7102.

(J.S.H.), with minimal risk of detection or interruption. Jane Doe (J.S.H.) further alleges that Defendants continued providing support for traffickers, including her own trafficker, despite obvious and apparent signs of sex trafficking in these hotels. Defendants were, therefore, knowingly receiving a benefit from participation in a venture that Defendants knew or should have known was engaged in sex trafficking.

7.      Defendants had the knowledge and opportunity to prevent the severe and permanent harm that Jane Doe (J.S.H.) experienced as the result of continuous sexual exploitation. Defendants failed to do so. Instead, Defendants chose to benefit from facilitating sex trafficking.  Accordingly, Jane Doe (J.S.H.) files this lawsuit.

## **PARTIES**

8.      Plaintiff, Jane Doe (J.S.H.) is a resident of Georgia. She may be contacted through her counsel, whose information is contained in the caption and in the signature blocks, below.

9.      Jane Doe (J.S.H.) is a victim of sex trafficking under 18 U.S.C. §1591(a) because she was harbored, transported, or provided for the purpose of being caused, through force fraud or coercion, to commit a commercial sex act. Consequently, the Plaintiff is identifying herself herein by the pseudonym, Jane Doe (J.S.H.), and will seek a court order permitting her to proceed anonymously. Given the nature of the allegations in this lawsuit, there is a collective and compelling interest in not publicly revealing the identity of Jane Doe (J.S.H.).

10.     The trafficking of Jane Doe (J.S.H.) occurred in or affected interstate commerce.

11.      Choice Hotels International, Inc. is a for-profit Delaware corporation with its principal place of business at 915 Meeting Street, North Bethesda, Montgomery County, Maryland 20852. It may be served through its registered agent Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware 19808.

12.     Choice Hotels International Service Corp. is a Delaware corporation with its principal place of business at 915 Meeting Street, North Bethesda, Montgomery County, Maryland 20852. It may be served through its registered agent Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware 19808.

13.     All references to Defendants Choice Hotels International, Inc. and Choice Hotels International Service Corp. include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. These references also include any director, officer, agent (either with direct/actual or implied/apparent authority), employee, person, firm, or corporation action on behalf of Choice Hotels International, Inc. now or at any time relevant to the claims herein.

14.     Defendants Choice Hotels International, Inc. and Choice Hotels International Service Corp, will collectively be referred to as "Choice Hotels," or "Franchisor Defendants." Upon information and belief, they owned, operated, controlled, and/or managed the following Franchisee location:  GP4 Property Owner, LLC d/b/a Suburban Extended Stay Bay Meadows located at 8285 Philips Hwy, Jacksonville, Florida 32256.

15.     GP4 Property Owner, LLC is a for-profit Delaware Limited Liability Company with its principal place of business at 4242 Six Forks Road, Suite 920, Raleigh, North Carolina 27609. It may be served through its registered agent CT Corporation System at 160 Mine Lake Ct., Suite 200, Raleigh, North Carolina 27615. At all relevant times, GP4 Property Owner, LLC owned, operated, and controlled the Suburban Extended Stay Bay Meadows, (herein referred to as "Suburban Bay Meadows") located at 8285 Philips Hwy, Jacksonville, Florida 32256. GP4 Property Owner, LLC will be referred to as a "Franchisee Defendant."

16.     All references to GP4 Property Owner, LLC include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. These references also include any director, officer, agent (either with direct/actual or implied/apparent authority), employee, person, firm, or corporation action on behalf of GP4 Property Owner, LLC now or at any time relevant to the claims herein.

17.     Whenever reference is made to any Defendant entity, such reference includes that entity, its parent companies, subsidiaries, affiliates, predecessors, and successors.  In addition, whenever reference is made to any act, deed, or transaction of any entity, the allegation means that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business or affairs.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more Defendants reside in this district.

20.     The Choice Hotels defendants have their principal place of business in North Bethesda, Montgomery County, Maryland, within the District of Maryland, Southern Division. Therefore, the Choice Hotels defendants are residents of the District of Maryland, Southern Division, for the purposes of § 1391(b)(1).

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of events or omissions giving rise to this claim occurred in this judicial district.

22.    Plaintiff's claims against Franchisee arise out of Franchisee's contacts with Maryland through Franchisee's relationship with the Choice Hotels Defendants, which have their principal place of business in the District of Maryland. Franchisee's participation in a venture with the Choice Hotels Defendants operating the subject motels occurred, in substantial part, in Maryland.

## STATEMENT OF FACTS

I.    **Jane Doe (J.S.H.) was a Victim of Unlawful Sex Trafficking at a Hotel Owned, Operated, Managed and Controlled by Defendants.**

23.    Jane Doe (J.S.H.) was trafficked through force and coercion by her trafficker to engage in numerous commercial sex acts.  Jane Doe (J.S.H.) was trafficked continuously from 2010 through November 30, 2016. During her trafficking period, specifically from June 1, 2014 through October of 2014, Jane Doe (J.S.H.) was trafficked at the following location:  GP4 Property Owner, LLC d/b/a Suburban Extended Stay Bay Meadows located at 8285 Philips Hwy, Jacksonville, FL 32256.

24.    Jane Doe (J.S.H.)'s trafficking repeatedly occurred in rooms of this Suburban Extended Stay Bay Meadows location and was facilitated by Choice Hotels and Franchisee Defendants.

25.    Between June 1, 2014 and October 31, 2014, Jane Doe (J.S.H.) was trafficked an incalculable number of times at the Suburban Bay Meadows location named above.

II.    **The Hotel Industry's Role in Sex Trafficking and Defendants' Knowledge of the Problem.**

26.    While the widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what Franchisor Defendants and Franchisee Defendants knew or should have known regarding the trafficking at their hotel properties, trafficking activity, including the trafficking of Jane Doe (J.S.H.), was pervasive and apparent at the locations at issue.

27.    Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[2] For years, sex traffickers have "been able to reap enormous profits with little risk when attempting to operate within hotels."[3] In 2014, 92 percent of calls to the Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[4] Hotels have been found to account for over 90 percent of commercial exploitation of children.[5]

28.    Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.[6]

29.    Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, and EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[7]

---

[2] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking-usslavery/ citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id*

[3] *See Human Trafficking in the Hotel Industry*, Polaris Project, February 10, 2016, at https://polarisproject.org/blog/2016/02/human-trafficking-in-the-hotel-industry/.

[4] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015), available at: https://humantraffickingsearch.org/wp-content/uploads/2019/05/Adoptingthecode.report.cornell.pdf

[5] Erika R. George & Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking in Modern Slavery*, 46 N.Y.U. J. INT'L L. & POL. 55, 92 (2013).

[6] *See, e.g.*, Department of Homeland Security, *Blue Campaign Toolkit*, available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing & Exploited Children, *Child Sex Trafficking Overview*, available at: https://www.missingkids.org/content/dam/missingkids/pdfs/CST%20Identification%20Resource.pdf; Love 146, *Red Flags for Hotel and Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, Human Trafficking Red Flags, available at: https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf .

[7] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf  (last visited April 13, 2023);National Center for Missing and Exploited Children, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*,_https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-

30.      Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:

a.   Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

b.   Individuals show signs of physical abuse, restraint, and/or confinement;

c.   Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

d.   Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

e.   Individuals lack freedom of movement or are constantly monitored;

f.   Individuals avoid eye contact and interaction with others;

g.   Individuals have no control over or possession of money or ID;

h.   Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

i.   Individuals have few or no personal items—such as no luggage or other bags;

j.   Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

k.   A group of girls appears to be traveling with an older female or male;

l.   A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

m.   Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

n.   Possession of bulk sexual paraphernalia such as condoms or lubricant;

o.   Possession or use of multiple cell phones; and

---

Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).

           p.   Possession or use of large amounts of cash or pre-paid cards.[8]

31.    The signs of sex trafficking in a hotel environment follow well-established patterns and can easily be detected by appropriately trained staff. Tool kits specific to the hotel industry have been developed, which help hotel staff in every position identify and respond to signs of sex trafficking.[9]  From check-in to check-out, there are indicators that traffickers and their victims routinely exhibit during their stay at a hotel.

32.    The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or coercion.[10] It is also well understood that "prostitution," "sex trafficking," and "child sex trafficking" involve a single common denominator, the exchange of sex for money.

33.    The definition of sex trafficking in the TVPRA under 18 U.S.C. §1591(a)(1) incorporates the definition of commercial sex act. Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Thus, Defendants knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking.[11]

34.    All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties, when enacting and

---

[8] *Id.*

[9] Department of Homeland Security, *Blue Campaign Toolkit*,
https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

[10] *See, e.g.*, *A National Overview of Prostitution and Sex Trafficking Demand Reduction Efforts, Final Report*,
https://www.ojp.gov/pdffiles1/nij/grants/238796.pdf; *Prostitution and Trafficking in Women: An Intimate Relationship*, https://www.ojp.gov/ncjrs/virtual-library/abstracts/prostitution-and-trafficking-women-intimate-relationship.

[11] *Id.*

enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

35.     The most effective weapon against sexual exploitation and human trafficking is education and training.[12]  As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out, there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[13]

36.     This same conclusion is echoed by others who seek to eliminate sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[14]  In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

37.     Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue from traffickers without taking necessary steps to identify and prevent trafficking in its hotels is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

---

[12] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).

[13] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.

[14] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

38.    Each of the Franchisor Defendants and Franchisee Defendants had a responsibility to adopt, implement, and adequately enforce policies to avoid facilitating sex trafficking and to train hotel staff to identify and respond to "red flags" of sex trafficking.

39.    Unfortunately for Jane Doe (J.S.H.), the promises made by the Franchisor Defendants and Franchisee Defendant have proven empty. Defendants have failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human trafficking in their hotels. Instead, they have continued financially benefiting by providing venues for the sexual exploitation of victims like Jane Doe (J.S.H.).

**III.    Sex Trafficking Has Long Been Prevalent at Choice Hotels Branded Properties, and Defendants Have Known About It.**

40.    Defendants' actual knowledge is *not* limited to general awareness of the problem of sex trafficking in the hotel industry. Choice Hotels has also known, since well before Jane Doe (J.S.H.) was trafficked at the Suburban Bay Meadows, that sex trafficking is endemic in its branded hotels specifically.

41.    Upon information and belief, Choice Hotels monitored criminal activity occurring at its branded hotels and was aware of activity indicating commercial sex trafficking or related crimes occurring at those branded hotels, including the Suburban Bay Meadows.

42.    Countless tales of tragedy, which upon information and belief Choice Hotels knows about, establish the entrenched and pervasive nature of Choice Hotels role in providing a venue where sex trafficking has continued, unabated, for years. For example:

- In 2004, A Los Angeles County woman faces charges of running a brothel in a budget motel across the street from Disneyland after three immigrants told police they were smuggled into the country and forced into prostitution.  Guest at the Econo Lodge, where the makeshift brothel was operated, can see the

Disneyland Hotel and a giant set of Mickey Mouse ears silhouetted on a roller coaster at California Adventure, Disneyland's sister attraction.[15]

- In 2012, A nationwide sex trafficking ring run by a violent pimp and his associates used Backpage.com to solicit customers for prostitutes as young as age 17, advertising the women as "smokin' hot babes," according to a federal indictment recently unsealed in Iowa. The two are charged in Iowa because Des Moines was a site where the ring did business on at least four occasions, sometimes holing up in an Econo Lodge near Interstate 35, the indictment says.[16]

- In 2013, A man arrested for human trafficking in Dothan appears to be part of a human trafficking circuit. Police say Alonso Santiagito held a Mississippi teen against her will, beat her, forced her to do drugs, and sold her for sex. He was holding the girl and other victims at the Quality Inn on Ross Clark Cir.[17]

- An Orlando man faces several felony charges after authorities say he kept an underage girl as a prostitute against her will and beat her. The investigation into Tyquarius Jevonte Lebby, 24, began Dec. 8 after the Metropolitan Bureau of Investigation received a tip that an underage girl was being held against her will at an Orange Blossom Trail motel, according to court documents. Authorities found explicit pictures of the girl on the internet. Agents posed undercover as clients and went to a room at the Rodeway Inn on the 6100 block of South Orange Blossom Trail.[18]

- In 2013, Two Columbia residents arrested in connection with a nationwide child sex trafficking bust were denied bond Monday in federal court. The 16-year-old, whose picture appeared in an online ad on backpage.com, was allegedly used for prostitution on three days in hotels in Columbia and Hilton Head. The FBI has hotel receipts where Gibson paid cash for the room at Quality Inn at the time of the undercover operation, as well as a copy of his driver's license where he reserved the room.[19]

---

[15] Claire Luna and Mai Tran, *Arrest in Sex Slave Case*, Los Angeles Times (February 13, 2004), https://www.latimes.com/archives/la-xpm-2004-feb-13-me-sexslave13-story.html

[16] Ryan J. Foley, *Feds: Sex trafficking ring used Backpage.com ads*, Associated Press (May 24, 2012), https://apnews.com/article/archive-de22067580494953bc14f6e9cfcca4aa

[17] *Dothan man arrested for human trafficking a teenager*, WTVM news 9 (August 13, 2013), https://www.wtvm.com/story/23122332/dothan-man/

[18] Michael Williams, *Authorities: Man trafficked, beat underage girl*, Orlando Sentinel, https://digitaledition.orlandosentinel.com/tribune/article_popover.aspx?guid=15cb9583-a04b-4eba-a5e7-5e38eefb25f7

[19] *Two accused of sex trafficking children denied bond*, WIS News 10 (August 5, 2013), https://www.wistv.com/story/23048777/two-accused-of-sex-trafficking-children-denied-bond/

- In 2013, A runaway Mississippi teen has found herself caught in the middle of a South Alabama sex slavery ring. The girl, whom police say is over 15, was held against her will at the Quality Inn in Dothan.[20]

- In 2013, Milwaukee police are searching for a 34-year-old man believed to have kidnapped a homeless woman and forced her into prostitution. Reno took photos of her and posted them on an online site known to advertise prostitutes and forced her into prostitution at the Rodeway Inn in Milwaukee.[21]

- In 2013, Jerel Jackson, 28, allegedly operated a prostitution venture between May 2012 and July 2013 primarily out of motels in Philadelphia. In April 2013, Jackson drove her and three others to Dover, Del., where they worked out of a room at the Sleep Inn and Suites on N. Dupont Highway until their operation was shut down by local police, according to the affidavit. [22]

- In 2014, Charlotte-Mecklenburg Police have arrested three people on human trafficking charges. Officers were called out to the Quality Inn on Griffith Street a couple of days ago to investigate a complaint.[23]

- In 2014, A Houston County jury found a Tennessee man guilty on Thursday afternoon of human trafficking and giving drugs to a 17-year-old girl. Police were made aware of the case when the victim left the Quality Inn, where she said she was being held, and walked almost 8 miles to the Guest House Inn, where she was taken in by a patron there.[24]

- In 2014, Two people arrested and charged with the human trafficking of 16 and 17-year-old girls at North Monroe Street hotels last week caught the eyes of the community and human trafficking experts, who say the case may be part of a larger enterprise in Tallahassee. In addition to the teens, two other violent confrontations at the Econo Lodge on North Monroe Street involved women working as prostitutes with Backpage ads.[25]

- In 2015, Three people are in custody following the discovery of drug and prostitution operations in Pooler, Georgia. Undercover Chatham-Savannah

[20] *Shock after man charged with human trafficking of girl in Dothan*, WSFA News 12 (August 13, 2013), https://www.wsfa.com/story/23118431/shock-after-man-charged-with-human-trafficking-of-girl-in-dothan/

[21] Ashley Luthern, *Milwaukee police search for man in kidnapping*, prostituting of woman, Milwaukee Journal Sentinel (August 2, 2013), https://archive.jsonline.com/news/crime/milwaukee-police-search-for-man-in-kidnapping-prostituting-of-woman-b9967520z1-218117721.html/

[22] Sam Wood, *Philly man faces charges of sex-trafficking by force*, The Inquirer (November 14, 2013), https://www.inquirer.com/philly/hp/news_update/Philly_man_faces_charges_of_sex-trafficking_by_force.html?outputType=amp

[23] *3 arrested on human trafficking charges in Charlotte*, WCNC News (May 30, 2014), https://www.wcnc.com/article/news/crime/3-arrested-on-human-trafficking-charges-in-charlotte/275-292839989

[24] *Man Guilty in Human Trafficking Case*, End Slavery Tennessee, (May 15, 2014), https://www.endslaverytn.org/news/man-guilty-in-human-trafficking-case-newsarticle

[25] Sean Rossman, *Arrests for sex trafficking 'tip of the iceberg' in Tallahassee*, Tallahassee Democrat (June 2, 2014), https://www.tallahassee.com/story/news/local/2014/06/02/sex-trafficking-arrests-tallahassee/9856065/

Counter Narcotics Team (CNT) agents conducted a search of two hotel rooms at the Econo Lodge hotel located at 500 East Highway 80 in Pooler, Georgia. The search resulted in the seizure of controlled substances, items commonly associated with drug use and distribution, items commonly associated with prostitution and various weapons.[26]

43.    Reviews of Choice Hotels branded properties, which upon information and belief Choice Hotels monitors regularly, also show the pervasiveness of sex trafficking at its branded properties and Choice Hotels knowledge of the same. For example:

- A TripAdvisor review from January 26, 2006, stated, "Hookers in the parking lot approaching members of our group.  When I complained, especially about the hookers, I was told there wasn't much they could do and they would 'pass on the complaints to the management.'"[27]

- A TripAdvisor review from September 18, 2012, stated, "Worst hotel ever…The smell of weed was horrible.  Smell came right in our room from all the other rooms.  Hookers up and down the hallways…never again!"[28]

- A TripAdvisor review from January 21, 2012, stated, "During my stay here every time I would go outside I was approached by someone wanting to bum a cigarette or wanting to sell me or buy drugs.  The staff here are extremely rude to say the least.  When I questioned why all the drug dealers and prostitutes, I was told by a member of the hotel staff because business is slow…If you are a normal everyday person, and not a drug addict or a John looking to get laid you don't want to come here!!!"[29]

- A Yelp review from October 2, 2012, stated, "Great hotel, if you enjoy being propositioned by prostitutes.  Skid row's finest.  A real DUMP."[30]

- A TripAdvisor review from October 22, 2013, stated, "Don't go unless you are looking for 1 hour hotel! Cock roaches and used condoms were found in our room.  Hotel staff is obviously used to these complaints.  They simply asked,

---

[26] *Multiple arrests in Pooler for drugs and prostitution*, WJCL News 22 (September 25, 2015), https://www.wjcl.com/article/multiple-arrests-in-pooler-for-drugs-and-prostitution/935100#
[27] https://www.tripadvisor.com/Hotel_Review-g34515-d17803954-Reviews-Quality_Inn_Suites_Downtown-Orlando_Florida.html
[28] https://www.tripadvisor.ca/Hotel_Review-g34515-d85472-Reviews-Quality_Inn_Orlando_Near_Universal_Blvd-Orlando_Florida.html
[29] https://www.tripadvisor.ca/Hotel_Review-g34141-d84259-Reviews-Rodeway_Inn_Clearwater_Largo-Clearwater_Florida.html
[30] https://www.yelp.com/biz/days-inn-by-wyndham-sarasota-bay-sarasota

'how many of them did you exactly find?' there were few drug addicts in the hotel!!!"[31]

- A TripAdvisor review from August 20, 2013, stated, "Two types of Hookers were offered by a pimp standing at the stairway (regular and tranny, whatever that means). Also, there is a lot of weed being smoked in the area, so no need to buy any from the dealer who stood in the parking lot all night, just inhale in your room and you'll be high enough. We did not feel safe since the pimp that hung around carried a gun visibly and told us, 'not to worry about anything, he had the area covered.'"[32]

- A TripAdvisor review from October 25, 2012, stated, "This hotel is awful. Between hookers running around, car alarms going off, people fighting and fussing, and the train that runs through here every night. I PROMISE YOU WON'T GET ANY SLEEP. It's pretty old and nasty. I have no idea how their in business. I'm assuming it's just for local hookers and drugs. Stay far away from here!!!"[33] *The Guest Relations Manager replied, "Please know that we have security on site to ensure the safety of our guests. We do not promote illegal activities at our hotel. If you or any other travelers are suspicious of guest behavior, we ask that you contact a member of our team immediately so that hotel security can investigate the situation."*

- A TripAdvisor review from January 5, 2013, stated, "Upon arriving back [at the hotel] our second night we were greeted by a woman of "dubious morals" (hooker" sitting outside waiting for her "date" to arrive, we assumed."[34]

- A TripAdvisor review from April 24, 2013, stated, "This was the most disgusting hotel I have ever had the misfortune of checking into. I had come to Orlando to meet with my sister who was flying in from the UK…Checked in, and 30 minutes later checked out. This hotel had cockroaches, the room we were given was filthy, a visiting prostitute went to the room next door whilst we stood and watched."[35]

- An Expedia review form November 9, 2013, stated, "I would not recommend this hotel to my worst enemy. The room next to me was being used to turn "tricks." Drunk or drugged out guests were yelling during the night. They were also running up and down the corridor beating on the doors at 4:00 in the

---

[31] https://www.tripadvisor.ca/Hotel_Review-g34515-d85472-Reviews-Quality_Inn_Orlando_Near_Universal_Blvd-Orlando_Florida.html
[32] https://www.tripadvisor.ca/Hotel_Review-g34515-d85472-Reviews-Quality_Inn_Orlando_Near_Universal_Blvd-Orlando_Florida.html
[33] https://www.tripadvisor.com/Hotel_Review-g54229-d275440-Reviews-Suburban_Extended_Stay_Hotel-Florence_South_Carolina.html
[34] https://www.tripadvisor.co/Hotel_Review-g34657-d231960-Reviews-Suburban_Extended_Stay_Hotel_Stuart-Stuart_Florida.html
[35] https://www.tripadvisor.ca/Hotel_Review-g34515-d85472-Reviews-Quality_Inn_Orlando_Near_Universal_Blvd-Orlando_Florida.html

morning.  Did not feel one bit safe at this hotel.  Actually checked out early and stayed somewhere else.  Never stay here."[36]

- An Expedia review from February 11, 2014, stated, "The price is nice for what we got the room for ($42/night) but honestly it wasn't worth it. I would of rather paid little more for a nicer place.  First night we heard some prostitute arguing with some cheapskate guy and kicked him out her room and was crying.  We were hardly at the room tho, which helped.  It's a pretty sketchy hotel in my opinion."[37]

- An Expedia review from July 17, 2016, stated, "The only nice part was the pool, which was not clean…The hotel seemed to be a front of a drug cartel.  The staff smiled at you but did not care about the quality of your stay.  Someone tried to break into our room at 1 am.  Scared the out of me and my family.  Will never stay again…instead I will choose to sleep on the side of the road.  DO NOT STAY HERE!"[38]

- A Google review from 2016, stated, "The place sucks.  We had spiders under the sheets when pulled them off the bed.  Would not recommend the place to anyone.  Plus all the prostitution outside makes it even worse."[39]

- A Google review from 2016, stated, "AWFUL!!! Was extremely filthy. Smelled of mold and body odor.  Early evening before dark when we checked in it seemed pretty quiet.  As it got dark and later into night, the whole place seemed to fill up with prostitutes.  Very loud."[40]

---

[36] https://www.expedia.com/Florence-Hotels-Suburban-Extended-Stay-Hotel.h911306.Hotel-Reviews

[37] https://www.expedia.com/Tampa-And-Vicinity-Hotels-Suburban-Studios-Airport.h885992.Hotel-Reviews

[38] https://www.expedia.com/Augusta-Hotels-Suburban-Extended-Stay-Hotel.h168338.Hotel-Reviews

[39]https://www.google.com/travel/hotels/Suburban%206902%20W%20Hillsborough%20Ave,%20Tampa,%20FL%2033634%20google/entity/CgsIx-

qG0bLw1cqSARAB/prices?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4886082,4886480,4892707,4893075,4902277,4905351,4905599,4926165,4926489,4931360,4935494,4936396,4937897,47061553&hl=en-

US&gl=us&ssta=1&q=Suburban+6902+W+Hillsborough+Ave,+Tampa,+FL+33634+google&grf=EmQKLAgOEig

SJnIkKiIKBwjnDxAEGBISBwjnDxAEGBMgADAeQMoCSgcI5w8QARgfCjQIDBIwEi6yASsSKQonCiUweDg4

YzJjMjA2N2Q0M2FlZTE6MHg5Mjk1NTc4MzHMjFiNTQ3&rp=EMfqhtGy8NXKkgEQx-

qG0bLw1cqSATgCQABIAcABAg&ictx=1

[40]https://www.google.com/travel/hotels/Suburban%20Extended%20Stay%201900%20SE%20Federal%20Hwy,%20Stuart,%20FL%2034994/entity/CgsIv4-

a4ce0vJefARAB/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,

4515404,4597339,4718358,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,487

9519,4886082,4886480,4893075,4902277,4905351,4905600,4906023,4906050,4920622,4926165,4926489,493075

1,4930753,4931265,4934307,4936396,4937954,47061553&hl=en-

US&gl=us&ssta=1&q=Suburban+Extended+Stay+1900+SE+Federal+Hwy,+Stuart,+FL+34994&grf=EmQKLAgO

EigSJnIkKiIKBwjnDxACGBMSBwjnDxACGBQgADAeQMoCSgcI5w8QARgZCjQIDBIwEi6yASsSKQonCiUwe

Dg4ZGVkZDBjNGM5ZGJhYTc6MHg5ZjJlZjhNDdjMjY4N2N2Jm&rp=EL-PmuHHtLyXnwEQv4-

a4ce0vJefATgCQABIAcABAg&ictx=1&sa=X&ved=2ahUKEwjLl_OO--P8AhXQkWoFHejJC8MQ4gl6BAh5EAU

16

- A TripAdvisor review from September 15, 2016, stated, "I've stayed in some BAD places before, but this hotel wins the prize for most nasty…Every night was a drunken Las Vegas type party outside our room, and the prostitutes basically ran the show…There is basically no maid service.  You have to ask them to clean your room…there are people fighting drunk outside every night, prostitutes running around in their underwear, you could smell marijuana coming out of every room, and drug dealers were running around asking folks what they wanted."[41]

- A Yelp review from April 2, 2016, stated, "By far this has been the worst hotel experience I've ever encountered.  Between the extremely loud drunks all night, the mass amounts of prostitution (I was asked by 3 if I wanted their services), the drug dealers everywhere (I was asked by 2 if I wanted to buy drugs).  All of these people were staying at your hotel.  I was originally going to stay for 16 days but do to all the above I was forced to change hotels.  This was supposed to be my vacation while visiting my kids before I go back out on deployment.  And the way they corrected this wrong doing is by emailing me a 'I'm sorry letter.'  This place need to be closed down."[42]

- A Google review from 2017, stated, "Hotel filled with hookers, drug dealers, drunks and awful rooms."[43]

- A Google review from 2018, stated, "The worst, I left room after I found the 5th cock roach.  Hotel full of semi-permanent residents, prostitutes, and drug addicts…Can't believe this is a name brand hotel, do not stay here if you're driving by hit the gas and keep on going."[44]

---

[41]https://www.tripadvisor.com/Hotel_Review-g54229-d275440-Reviews-Suburban_Extended_Stay_Hotel-Florence_South_Carolina.html
[42] https://www.yelp.com/biz/suburban-extended-stay-hotel-florence
[43]https://www.google.com/travel/hotels/Suburban%20Extended%20Stay%201914%20W%20Lucas%20St,%20Florence,%20SC%2029501%20google/entity/CgoIs5OZ1oTbiY1aEAE/reviews?g2lb=2502548,2503771,2503781,425816 8,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4814050,4 821091,4861688,4864715,4874190,4886082,4886480,4893075,4902277,4905351,4906023,4926165,4926489,4930 751,4930752,4931360,4934343,4936396,4937897,47061553&hl=en-US&gl=us&ssta=1&q=Suburban+Extended+Stay+1914+W+Lucas+St,+Florence,+SC+29501+google&grf=EmQK LAgOEigSJnIkKiIKBwjnDxACGAESBwjnDxACGAIgADAeQMoCSgcI5w8QARgeCjQIDBIwEi6yASsSKQonCi UweDg4NTU2NjQ0YzU1MGE1OWY6MHg1YTFhMjZkODRhYzY0OWIz&rp=ELOTmdaE24mNWhCzk5nWh NuJjVo4AkAASAHAAQI&ictx=1&sa=X&ved=2ahUKEwil7YSNwfD8AhXFyLsIHZ08CIMQ4gl6BAhmEAU
[44]https://www.google.com/travel/hotels/Suburban%20Extended%20Stay%201900%20SE%20Federal%20Hwy,%20Stuart,%20FL%2034994/entity/CgsIv4-a4ce0vJefARAB/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192, 4515404,4597339,4718358,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,487 9519,4886082,4886480,4893075,4902277,4905600,4906023,4906050,4920622,4926165,4926489,493075 1,4930753,4931265,4934307,4936396,4937954,47061553&hl=en-US&gl=us&ssta=1&q=Suburban+Extended+Stay+1900+SE+Federal+Hwy,+Stuart,+FL+34994&grf=EmQKLAgO EigSJnIkKiIKBwjnDxACGBMSBwjnDxACGBQgADAeQMoCSgcI5w8QARgZCjQIDBIwEi6yASsSKQonCiUwe Dg4ZGVkZDBjNGM5ZGJhYTc6MHg5ZjJlZjFhNDdjMjY4N2Jm&rp=EL-PmuHHtLyXnwEQv4-a4ce0vJefATgCQABIAcABAg&ictx=1&sa=X&ved=2ahUKEwjLl_OO--P8AhXQkWoFHejJC8MQ4gl6BAh5EAU

- A Google review from 2018, stated, "Well what can I say about here…if your looking for drugs and prostitution delivered to your door, then look no further…So if you are looking for an overpriced pay by the night trap house, the Suburban is for you. Good luck!"[45]

- A Google review from 2018, stated, "This place is absolutely disgusting! They have prostitutes and drug dealers renting rooms and running in and out all night long and they are very well aware of it, but do nothing about it except continue to rent them rooms day after day."[46]

- A Google review form 2018, stated, "Awful experience…Checked out half hour after we checked in and still got charged for the night. Drug dealing and sex trading going on out in the open."[47]

44.    The sampling of news stories and reviews from before the trafficking period establishes that, at the time Jane Doe (J.S.H.) was trafficked at the Suburban Bay Meadows, Choice Hotels knew at least the following:

[45]https://www.google.com/travel/hotels/Suburban%20Extended%20Stay%201900%20SE%20Federal%20Hwy,%20Stuart,%20FL%2034994/entity/CgsIv4-

a4ce0vJefARAB/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4718358,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4879519,4886082,4886480,4893075,4902277,4905351,4905600,4906023,4906050,4920622,4926165,4926489,4930751,4930753,4931265,4934307,4936396,4937954,47061553&hl=en-

US&gl=us&ssta=1&q=Suburban+Extended+Stay+1900+SE+Federal+Hwy,+Stuart,+FL+34994&grf=EmQKLAgO EigSJnIkKiIKBwjnDxACGBMSBwjnDxACGBQgADAeQMoCSgcI5w8QARgZCjQIDBIwEi6yASsSKQonCiUwe Dg4ZGVkZDBjNGM5ZGJhYTc6MHg5ZjJlZjFhNDdjMjY4N2Jm&rp=EL-PmuHHtLyXnwEQv4-

a4ce0vJefATgCQABIAcABAg&ictx=1&sa=X&ved=2ahUKEwjLl_OO--P8AhXQkWoFHejJC8MQ4gl6BAh5EAU
[46]https://www.google.com/travel/hotels/Suburban%20Extended%20Stay%201914%20W%20Lucas%20St,%20Florence,%20SC%2029501%20google/entity/CgoIs5OZ1oTbiY1aEAE/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4886082,4886480,4893075,4902277,4905351,4906023,4926165,4926489,4930751,4930752,4931360,4934343,4936396,4937897,47061553&hl=en-

US&gl=us&ssta=1&q=Suburban+Extended+Stay+1914+W+Lucas+St,+Florence,+SC+29501+google&grf=EmQK LAgOEigSJnIkKiIKBwjnDxACGAESBwjnDxACGAIgADAeQMoCSgcI5w8QARgeCjQIDBIwEi6yASsSKQonCi UweDg4NTU2NjQ0YzU1MGE1OWY6MHg1YTFhMjZkODRhYzY0OWIz&rp=ELOTmdaE24mNWhCzk5nWhNuJjVo4AkAASAHAAQI&ictx=1&sa=X&ved=2ahUKEwil7YSNwfD8AhXFyLsIHZ08CIMQ4gl6BAhmEAU
[47]https://www.google.com/travel/hotels/Suburban%20Extended%20Stay%201900%20SE%20Federal%20Hwy,%20Stuart,%20FL%2034994/entity/CgsIv4-

a4ce0vJefARAB/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4718358,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4879519,4886082,4886480,4893075,4902277,4905351,4905600,4906023,4906050,4920622,4926165,4926489,4930751,4930753,4931265,4934307,4936396,4937954,47061553&hl=en-

US&gl=us&ssta=1&q=Suburban+Extended+Stay+1900+SE+Federal+Hwy,+Stuart,+FL+34994&grf=EmQKLAgO EigSJnIkKiIKBwjnDxACGBMSBwjnDxACGBQgADAeQMoCSgcI5w8QARgZCjQIDBIwEi6yASsSKQonCiUweDg4ZGVkZDBjNGM5ZGJhYTc6MHg5ZjJlZjFhNDdjMjY4N2Jm&rp=EL-PmuHHtLyXnwEQv4-

a4ce0vJefATgCQABIAcABAg&ictx=1&sa=X&ved=2ahUKEwjLl_OO--P8AhXQkWoFHejJC8MQ4gl6BAh5EAU

a. The use of its branded properties for sex trafficking was not limited to one location or geographic region but was a widespread problem;

b. Commercial sex work occurring at its branded properties involved trafficking and compelled prostitution;

c. Its franchisees and hotel staff were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at its hotel properties;

d. Its efforts, if any, to stop facilitating sex trafficking in its branded properties were not effective; and

e. It was, by its acts and omissions, facilitating sex trafficking at its branded properties by providing venues where that trafficking was occurring widely and without sufficient detection or deterrence.

45.     The news articles and reviews after Jane Doe (J.S.H.)'s trafficking period show that, despite the continually mounting evidence that sex trafficking at its properties was ongoing and growing, Choice Hotels did not change its course. Choice Hotels chose to continue earning revenue and profits from renting out space in their hotels as a venue for trafficking.

**IV.     Sex Trafficking Was Prevalent and Obvious at Suburban Bay Meadows**

46.     Choice Hotels and GP4 Property Owner, LLC were also specifically aware that sex trafficking was prevalent at the subject Suburban Bay Meadows.

47.     Choice Hotels and GP4 Property Owner, LLC knew that the Suburban was in a high-crime area with a known history of reports of sex trafficking.

48.     Online reviews of Suburban, which upon information and belief were monitored by Choice Hotels and GP4 Property Owner, LLC, establish the nature of the Suburban Bay Meadows's role as a venue for sex trafficking:

• A Yelp review from May 21, 2015, stated, "…Avoid this hotel at any cost. It is a drug/lowlife/prostitute infested pit, it stinks, it's filthy, and I'm sorry I ever booked it. Don't believe the website photos...it is nothing like that in real life. The only hotel

I've been in that was worse was one I was shot at in, and this is a very close second."[48]

- A Yelp review from April 8, 2018, stated, "…The place is more like a halfway house. It seems to be filled with drug dealers, prostitutes, and homeless people. The room was disgusting. If you are in the area and can't find another hotel, do yourself a favor and sleep in your car…"[49]

49.    Traffickers, including Jane Doe (J.S.H.)'s trafficker, repeatedly chose to use the subject Suburban Bay Meadows location for their sex trafficking activity. As such, Choice Hotels and Franchisee Defendants also knew or should have known about the pervasive sex trafficking at the Suburban Bay Meadows location based on obvious indicators of this activity.

**a. Defendants knew Jane Doe (J.S.H.) was being trafficked at the subject Suburban Bay Meadows location because of the apparent and obvious "red flags" of sex trafficking.**

50.    During the period that Jane Doe (J.S.H.) was trafficked at the subject Suburban Bay Meadows, there were obvious signs that her traffickers were engaged in sex trafficking:

a.   The hotel rooms in which she was trafficked were frequently paid for with cash or prepaid cards;

b.   Other girls were trafficked at the same hotel at the same time as Jane Doe (J.S.H.);

c.   Jane Doe (J.S.H.) and her traffickers would stay for multiple times between June 1, 2014 through October of 2014.

d.   The front desk gave her trafficker a specific room for them to stay.

e.   Jane Doe (J.S.H.) asked for clean sheets and towels multiple times a day.

f.   The traffickers were often present with Jane Doe (J.S.H.) at check in;

g.   There was heavy foot traffic in and out of Jane Doe (J.S.H.)'s room involving men who were not hotel guests;

---

[48] https://www.yelp.com/biz/suburban-extended-stay-bay-meadows-jacksonville?hrid=oa5yRAIrTE_k0T3xEdJq1w&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct)
[49] https://www.yelp.com/biz/suburban-extended-stay-bay-meadows-jacksonville?hrid=dmaTJRQCRFmHoDHcbYYiug&utm_campaign=www_review_share_popup&utm_medium=copy_link&utm_source=(direct)

h.  Jane Doe (J.S.H.) had around twenty (20) johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time; and

i.  Other obvious signs of trafficking consistent with the modus operandi of her traffickers and which included well known "red flags" for trafficking in a hotel.

51.  Based upon information and belief, multiple employees at the subject Suburban Bay Meadows, including management-level employees, observed, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment.

52.  As such, Franchisee Defendant knew or was willfully blind to the fact that Jane Doe (J.S.H.) was being trafficked at the subject Suburban Bay Meadows property.

53.  Given these obvious signs, Choice Hotels knew or should have known about the trafficking of Jane Doe (J.S.H.) based on its policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking.

## V.  Defendants actively facilitated sex trafficking at the subject Suburban Bay Meadows property, including the trafficking of Jane Doe (J.S.H.).

54.  Choice Hotels and Franchisee Defendant had both actual and constructive knowledge of the trafficking of Jane Doe (J.S.H.) at the Suburban Bay Meadows property because the trafficking was the direct result of Choice Hotels and Franchisee Defendant facilitating her trafficking at the Suburban Bay Meadows property.

### a.  Franchisee Defendant facilitated the trafficking of Jane Doe (J.S.H.).

55.  Franchisee Defendant are responsible for the acts, omissions, and knowledge of all employees of the Suburban Bay Meadows when operating the hotel because these acts and omissions were committed in the course and scope of employment, because Franchisee Defendant ratified these acts and omissions, and because Franchisee Defendant failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks,

known to Franchisee Defendant, of sex trafficking occurring at these Choice Hotels branded locations including the subject location.

56.    Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject Suburban Bay Meadows location, Franchisee Defendant continued renting rooms to these traffickers, including the rooms used to sexually exploit victims.

57.    Franchisee Defendant knew or was willfully blind to the fact that Jane Doe (J.S.H.) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them a venue in the form of hotel rooms and related services, to facilitate Jane Doe (J.S.H.)'s sexual exploitation.

58.    Franchisee Defendant also facilitated widespread trafficking at their subject Suburban Bay Meadows location, including the trafficking of Jane Doe (J.S.H.), in ways including:

    a.  allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking;

    b.  inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

    c.  choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, and/or applicable franchisor policies and procedures; and

    d.  implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

**b.  The Choice Hotels Defendants facilitated the trafficking of Jane Doe (J.S.H.).**

59.    Upon information and belief, the Choice Hotels Defendants participated directly in aspects of the operation of the subject Suburban Bay Meadows location that influenced whether and to what extent trafficking occurred at the hotels, including but not limited to the trafficking of Jane Doe (J.S.H.), as follows:

a. The Choice Hotels Defendants have publicly assumed responsibility and control over the human trafficking response of all Choice Hotels properties, including design and implementation of practices to prevent trafficking, safety and security procedures, employee and franchisee education, training, and response, partnership with external organizations, and advocacy;

b. The Choice Hotels Defendants retained control over when its branded hotels would share information with law enforcement and when law enforcement would be contacted about suspected criminal activity in Choice Hotels branded hotels;

c. The Choice Hotels Defendants retained control over the response to trafficking by creating a reporting hotline for hotel staff and franchisees to report suspected human trafficking to the Choice Hotels Defendants. The Choice Hotels Defendants determined when issues should be escalated to the National Human Trafficking Hotline or law enforcement;

d. The Choice Hotels Defendants retained control over determining which hotels needed additional training or other resources based on a high risk of human trafficking and other related criminal activity;

e. The Choice Hotels Defendants expressly retained control to terminate hotel staff and/or a franchising agreement based on the response to human trafficking;

f. The Choice Hotels Defendants retained control, at the brand-wide level, over training on how to spot the signs of and help prevent human trafficking. The Choice Hotels Defendants determined whether the training is provided, when it is provided, the content of the training, how the training is delivered, who receives the training, and the consequences if someone does not participate in the training or fails to follow such training;

g. Although they delayed making any reasonable effort to do so, the Choice Hotels Defendants acknowledge that they retain control to adopt requirements for franchised hotels specifically designed to prevent human trafficking and other criminal activity;

h. The Choice Hotels Defendants maintain a Safety & Security Team and a Critical Incident Rapid Response Team that are charged with investigating and responding to potential criminal incidents at all Choice Hotels properties, including suspected trafficking incidents;

i. The Choice Hotels Defendants are responsible for adopting, enforcing, and monitoring policies and codes of conduct related to human trafficking at the subject Suburban Bay Meadows location;

j. The Choice Hotels Defendants maintained control over all details of the terms under which franchised hotels, including the subject Suburban Bay Meadows location, offered internet services to customers, including dictating the

software, hardware, and service provider to be used, setting all policies about use and restrictions on use, and actively collecting and monitoring guest internet usage data. The Choice Hotels Defendants dictated whether sites frequently used to solicit clients for sex trafficking victims would be accessible through the internet at the subject Suburban Bay Meadows location;

k.  The Choice Hotels Defendants retained control over the setting, supervision, overseeing, and enforcement of detailed policies and protocol for housekeeping services at the subject Suburban Bay Meadows location, including policies for how often rooms must be entered, how to respond to guest refusals of entry into rooms, and steps to monitor guest safety issues through housekeeping services; and

l.  The Choice Hotels Defendants collected, maintained, and analyzed detailed data regarding housekeeping services at the subject Suburban Bay Meadows location, including trends that would reveal patterns consistent with human trafficking.

60.  Choice Hotels directly participated in and retained day-to-day control over renting rooms at the subject Suburban Bay Meadows location by, among other things:

a.  The Choice Hotels Defendants controlled all details of the guest reservation, check-in, and payment processes through management and control over all systems used for those processes and adoption of detailed and specific policies governing the means and methods used for each of these processes;

b.  The Choice Hotels Defendants directly made reservations for rooms at the subject Suburban Bay Meadows location and accepted payment for those rooms through a central reservation system that they controlled and operated. The Choice Hotels Defendant could reserve rooms and accept payments without requiring franchisee approval or involvement;

c.  The Choice Hotels Defendants established and maintained control over a brand-wide "do not rent" system. The Choice Hotels Defendants set all policies related to use of this system and dictated the day-to-day details of reservations at the subject Suburban Bay Meadows location through detailed policies that it established regarding use of this "do not rent" system;

d.  The Choice Hotels Defendants controlled room rates, required discounts, mandatory fees, and rewards program;

e.  The Choice Hotels Defendants controlled and restricted the ability of franchisee and staff to refuse or cancel a reservation;

f.  The Choice Hotels Defendants controlled and oversaw policies and procedures regarding check-in, payment, and identity verification procedures;

g.  The Choice Hotels Defendants collected, retained, monitored, and analyzed detailed data about every guest who stayed at the subject Suburban Bay Meadows location;

h.  The Choice Hotels Defendants established detailed policies and protocol that dictated, step-by-step, everything that would happen from the time a guest arrived at the subject Suburban Bay Meadows location until they entered their guest room. This included operational directives regarding payment methods, identification requirements, the number of guests that could be in each room and whether information needed to be collected for each guest, what questions hotel staff should and should not ask, and other matters related to check-in; and

i.  The Choice Hotels Defendants required franchisees to use Choice Hotels' property management system, which was owned, maintained, controlled, and operated by the Choice Hotels Defendants, for virtually all aspects of hotel operations regarding room reservations and payment.

61.    Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject Suburban Bay Meadows location named herein, Choice Hotels continued renting rooms to traffickers, including the rooms used to sexually exploit victims, including Jane Doe (J.S.H.).

62.    Choice Hotels knew or should have known that Jane Doe (J.S.H.) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them hotel rooms and related services to facilitate Jane Doe (J.S.H.)'s sexual exploitation.

63.    Upon information and belief, despite having actual or constructive knowledge of the ongoing sex trafficking at the subject Suburban Bay Meadows location, the Choice Hotels Defendants continued participating in a venture at these hotels, with its franchisees and the hotel staff, in a way that it knew or should have known would lead to additional sex trafficking at the hotels, including but not limited to by the following:

a.  The Choice Hotels Defendants adopted inappropriate and inadequate practices for selecting, training, supervising, managing, and disciplining franchisees and hotel staff regarding issues related to human trafficking;

b.  The Choice Hotels Defendants provided inadequate training on issues related to human trafficking and unreasonably delayed providing training;

c.  The Choice Hotels Defendants adopted a safety and security budget and safety and security practices that were clearly insufficient considering the known problem of sex trafficking at Choice Hotels properties;

d.  The Choice Hotels Defendants implicitly approved decisions by franchisees and hotel staff not to report or respond to criminal activity including sex trafficking appropriately;

e.  The Choice Hotels Defendants continued to use policies, protocols, and practices that had been shown to lead to widespread trafficking at the subject Suburban Bay Meadows location;

f.  The Choice Hotels Defendants attracted traffickers by affirmatively creating a favorable venue where access was easy, risks of interference were low, and traceability was minimal;

g.  Despite having specific knowledge of policies that would significantly reduce sex trafficking at its branded locations including the subject Suburban Bay Meadows, the Choice Hotels Defendants declined to implement policies that would likely have the effect of reducing its sex-trafficking related profits or that would require publicly acknowledging the ongoing problem of sex trafficking at its properties;

h.  The Choice Hotels Defendants willfully delayed taking obvious and apparent steps to stop facilitating sex trafficking, which they had the ability and responsibility to take sooner;

i.  The Choice Hotels Defendants allowed traffickers to reserve rooms using cash, which provided relative anonymity and non-traceability; and

j.  The Choice Hotels Defendants provided traffickers with access to internet services in a manner that the Choice Hotels Defendants knew or should have known would be used to facilitate trafficking by promoting commercial sex services online.

64.    If Choice Hotels had exercised reasonable diligence when operating their Suburban Bay Meadows and in the areas where it retained control, Choice Hotels would have prevented the subject Suburban Bay Meadows location from being used to facilitate widespread and ongoing sex trafficking, including the trafficking of Jane Doe (J.S.H.). Instead, Choice Hotels engaged in the course of conduct that affirmatively facilitated widespread and ongoing sex trafficking, including the trafficking of Jane Doe (J.S.H.).

**c. Defendants' ventures at the Suburban Bay Meadows.**

65.     Through the conduct described above, Choice Hotels and Franchisee Defendant knowingly benefited from engaging in a venture with sex traffickers at the subject Suburban Bay Meadows location named herein, including Jane Doe (J.S.H.)'s traffickers, as follows:

a.  Choice Hotels and Franchisee Defendant both received benefits, including increased revenue, every time a room was rented at the Suburban Bay Meadows;

b.  This venture engaged in violations of 18 U.S.C. §1591 through the actions of the criminal traffickers at the Suburban Bay Meadows location, which Choice Hotels and Franchisee Defendant knew or should have known about;

c.  Choice Hotels and Franchisee Defendant associated with traffickers, including Jane Doe (J.S.H.)'s traffickers, by acting jointly to continue to rent rooms to these traffickers despite having actual or constructive knowledge of their sex trafficking activity;

d.  Choice Hotels and Franchisee Defendant had a mutually beneficial relationship with the traffickers at the Suburban Bay Meadows, fueled by sexual exploitation of victims, including Jane Doe (J.S.H.);

e.  Sex traffickers, including Jane Doe (J.S.H.)'s traffickers, frequently used the Suburban Bay Meadows location for their trafficking because of an implicit understanding that the Suburban Bay Meadows location was an avenue that would facilitate their trafficking, providing minimal interference and lowering their risk of detection. This understanding occurred because of the conduct of Choice Hotels and Franchisee Defendant facilitating that trafficking as described throughout this Complaint. This resulted in benefits, including increased revenue, for Choice Hotels and Franchisee Defendant;

f.  Both Choice Hotels and Franchisee Defendant participated in this venture through the conduct described throughout Plaintiff's Original Complaint, as they were jointly responsible for relevant aspects of hotel operations; and

g.  Jane Doe (J.S.H.)'s trafficking at the subject Suburban Bay Meadows was a result of Choice Hotels and Franchisee Defendant's participation in a venture with criminal traffickers. If Choice Hotels and Franchisee Defendant had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe (J.S.H.)'s trafficking at the subject Suburban Bay Meadows location.

66.    Through the conduct described above, Choice Hotels also knowingly benefited from engaging in a commercial venture with Franchisee Defendant operating the Suburban Bay Meadows as follows:

    a.  Choice Hotels associated with Franchisee Defendant to operate the Suburban Bay Meadows location;

    b.  Pursuant to the terms of the franchising agreement, both Choice Hotels and Franchisee Defendant received financial benefits from operating the Suburban Bay Meadows, including revenue generated specifically by renting rooms to traffickers. They engaged in revenue sharing and had a common incentive to maximize revenue;

    c.  By participating in a venture that facilitated sex trafficking, each Choice Hotels and Franchisee also benefitted by keeping operating costs low, maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade and by not acknowledging the pervasive nature of sex trafficking in their hotels generally and the subject Suburban Bay Meadows specifically;

    d.  This venture violated 18 U.S.C. §§ 1591(a) and 1595(a) through the conduct of Franchisee Defendant and the widespread sex trafficking at the subject Suburban Bay Meadows location named herein;

    e.  Despite its actual or constructive knowledge that the venture was engaged in violations of 18 U.S.C. §§ 1591(a) and 1595(a), Choice Hotels participated in the venture by continuing to associate with Franchisee Defendant to operate the Suburban Bay Meadows location named herein in a way that it knew or should have known would lead to further violations of 18 U.S.C. §1591(a), including trafficking of victims like Jane Doe (J.S.H.); and

    f.  Jane Doe (J.S.H.)'s trafficking at the Suburban Bay Meadows location named herein was a result of Choice Hotels' and Franchisee Defendant's facilitation of the widespread and ongoing violations of 18 U.S.C. §§ 1591(a) and 1595(a) at the Suburban Bay Meadows location. Had Choice Hotels not continued participating in a venture that it knew or should have known was engaged in violations of 18 U.S.C. §§ 1591(a) and 1595(a), it would not have received a benefit from Jane Doe (J.S.H.)'s trafficking at the subject Suburban Bay Meadows location named herein.

## VI.    Franchisee Defendant and the Staff at the Suburban Bay Meadows Location Named Herein Acted as Actual Agents of Choice Hotels.

67.    Choice Hotels is vicariously liable for the acts, omissions, and knowledge of Choice Hotels and staff at the subject Suburban Bay Meadows, which is Choice Hotels' actual agents or subagents.

68.    The Choice Hotels Defendants subjected Franchisee Defendant to detailed standards and requirements regarding the operation of the Suburban Bay Meadows location through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, and expectations imposed by the Choice Hotels Defendants.

69.    The Choice Hotels Defendants obscure the full extent of control they exercise over the franchisee by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those policies and manuals. Upon information and belief, the standards that the Choice Hotels Defendants imposed on the franchisee:

       a.   did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools Franchisee Defendant used at the Suburban Bay Meadows;

       b.   covered virtually all aspects of hotel operations, including internal operating functions;

       c.   dictated the specific manner in which Franchisee Defendant and hotel staff must carry out most day-to-day functions at the subject Suburban Bay Meadows; and

       d.   significantly exceeded what was necessary for Choice Hotels to protect its registered trademarks.

70.    In addition to the ways described above, upon information and belief, Choice Hotels exercised and reserved the right to exercise systemic and pervasive control over Franchisee Defendant's day-to-day operation of the Suburban Bay Meadows, including the following ways:

a. The Choice Hotels Defendant required franchisees and management of franchised hotels to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for the Choice Hotels Defendants to protect their registered trademarks;

b. The Choice Hotels Defendants provided training for hotel management and select hotel staff on-site at the subject Suburban Bay Meadows and at locations selected by the Choice Hotels Defendants;

c. The Choice Hotels Defendants required all hotel staff to participate in training it created through an online learning platform it controlled and maintained;

d. The Choice Hotels Defendants controlled training provided by franchisees to hotel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;

e. The Choice Hotels Defendants retained sole discretion to determine whether all training had been completed satisfactorily;

f. For certain products and services that franchisees were required to purchase to operate the subject Suburban Bay Meadows, the Choice Hotels Defendants designated approved vendors and prohibited franchisees from purchasing goods and services from anyone other than an approved vendor;

g. The Choice Hotels Defendants required franchisee to sign a technology agreement governing the terms under which franchisees must procure and use technical services and software while operating the Suburban Bay Meadows. Franchisee was required to install, and use certain brands, types, makes, and/or models of hardware, software, peripheral equipment, and support services to perform internal operating functions at the hotel;

h. The Choice Hotels Defendants set required staffing levels for the Suburban Bay Meadows;

i. The Choice Hotels Defendants established detailed job descriptions for all positions in its properties and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so;

j. The Choice Hotels Defendants set requirements for the hiring process used by franchisee and oversaw employee discipline processes and termination decisions;

k. The Choice Hotels Defendants provided benefits for employees of franchised hotels;

l.  The Choice Hotels Defendants required Defendant Franchisee to use a customer resource management program maintained and operated by the Choice Hotels Defendants;

m.  The Choice Hotels Defendants controlled channels for guests to report complaints or provide feedback regarding the Suburban Bay Meadows, and directly participated in the response and/or supervised the response to customer complaints or other feedback. The Choice Hotels Defendants retained the right to provide refunds or other compensation to guests and to require Defendant Franchisee to pay associated costs;

n.  The Choice Hotels Defendants generated reports and analysis of guest complaints and online reviews for the Suburban Bay Meadows;

o.  The Choice Hotels Defendants required Defendant Franchisee to use a Guest Relations Application owned, operated, and maintained by the Choice Hotels Defendants to manage all guest data and information. The Choice Hotels Defendants could use the backend of this system to analyze data and generate reports;

p.  The Choice Hotels Defendants set detailed requirements for insurance that franchisees must purchase and retain the right to purchase insurance for franchisees and to bill franchisees directly for that insurance if the Choice Hotels Defendants determined that the franchisees have not purchased adequate insurance;

q.  The Choice Hotels Defendants regularly audited the books and records of Defendant Franchisee;

r.  The Choice Hotels Defendants conducted frequent and unscheduled inspections of Choice Hotels properties, including the Suburban Bay Meadows;

s.  The Choice Hotels Defendants retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of the franchising agreements if franchisees violated any of the Choice Hotels Defendants' detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the Suburban Bay Meadows;

t.  The Choice Hotels Defendants controlled all marketing for the Suburban Bay Meadows and prohibited franchisees from maintaining any online presence unless specifically reviewed and approved by the Choice Hotels Defendants;

u.  The Choice Hotels Defendants imposed detailed recordkeeping and reporting requirements on Defendant Franchisee regarding virtually all aspects of hotel operations;

v.  The Choice Hotels Defendants supervised and controlled day-to-day operations of the Suburban Bay Meadows through detailed information and extensive reports that it obtained through the property management system and other software systems it required Defendant Franchisee to use; and

w.  The Choice Hotels Defendants retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations.

**VII.    Defendants are Jointly and Severally Liable for Jane Doe (J.S.H.)'s Damages.**

71.    The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the injuries and damages to Jane Doe (J.S.H.).

72.    Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Jane Doe (J.S.H.) for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

## <u>CAUSE OF ACTION—SEX TRAFFICKING UNDER THE TVPRA</u>

**COUNT I**
**Perpetrator Liability Under 18 U.S.C §1595(a)**
**Based on Violation of 18 U.S.C §1591(a)**

73.    Jane Doe (J.S.H.)  re-alleges and incorporates by reference the factual allegations contained in all prior paragraphs as if fully stated in this Count.

74.    Jane Doe (J.S.H.) is a victim of sex trafficking within the meaning of §1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

75.    Choice Hotels and Franchisee Defendants are perpetrators within the meaning of 18 U.S.C §1595(a) because Choice Hotels and Franchisee Defendants:

a.  violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, it harbored individuals (including Jane Doe (J.S.H.) knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at its respective hotel property; and

b. violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, it knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at its respective hotel properties.

76.    Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe (J.S.H.) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

## COUNT II
### Beneficiary Liability Under §1595 (a) of the TVPRA

77.    Jane Doe (J.S.H.) re-alleges and incorporates by reference the factual allegations contained in all prior paragraphs as if fully stated in this Count.

78.    Jane Doe (J.S.H.) is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

79.    Through acts and omissions described throughout this Complaint, Franchisor Defendants and Franchisee Defendant received a financial benefit from participating in a venture with traffickers, including Jane Doe (J.S.H.)'s traffickers, despite the fact that each defendant knew or should have known that these traffickers, including Jane Doe (J.S.H.)'s traffickers, were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2). Thus, Franchisor Defendants and Franchisee Defendant are liable as a beneficiary under 18 U.S.C §1595(a).

80.    Through the acts and omissions described throughout this Complaint, Franchisor Defendants received a financial benefit from participating in a venture with its respective franchisees regarding the operations of its respective hotel properties even though Franchisor

Defendants knew or should have known that this venture was violating 18 U.S.C §§ 1591(a) and 1595(a).

81.    Violations of 18 U.S.C §1595(a) by Franchisor Defendants and Franchisee Defendant as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe (J.S.H.) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

**COUNT III**
**Vicarious Liability for TVPRA Violations**

82.    Jane Doe (J.S.H.) re-alleges and incorporates by reference the factual allegations contained in all prior paragraphs as if fully stated in this Count.

83.    Franchisee Defendant acted as the actual agent of its respective Franchisor Defendants when operating its respective hotel property.

84.    Through the acts and omissions described throughout this Complaint, Franchisor Defendants, through its employees, agents, and/or representatives, operating within the ordinary course and scope of their employment, exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisees to operate its respective hotel property.

85.    Under the TVPRA and the federal common law, a principal is vicariously liable for the violations of its actual agents and its subagents.

86.    Franchisor Defendants are vicariously liable for the TVPRA violations of its franchisees and the subagents of that franchisee.

87.    As alleged above, Choice Hotels is directly liable to Jane Doe (J.S.H.) for violations of the TVPRA, both as a perpetrator under 18 U.S.C §1591(a) and as a beneficiary under 18 U.S.C

§1595(a). Franchisee Defendant is also directly liable to Jane Doe (J.S.H.) under § 2255. Choice Hotels is vicariously liable to Jane Doe (J.S.H.) for those same violations.

## **PRAYER FOR RELIEF**

WHEREFORE, Jane Doe (J.S.H.) prays that this case be set for trial before a jury and that, upon a final hearing of the cause, judgment be entered for Jane Doe (J.S.H.) against all Defendants jointly and severally for the following relief:

     a.  Actual damages (until trial and in the future);

     b.  Incidental and consequential damages (until trial and in the future);

     c.  Mental anguish and emotional distress damages (until trial and in the future);

     d.  Lost earnings and lost earning capacity (until trial and in the future);

     e.  Necessary medical expenses (until trial and in the future);

     f.  Life care expenses (until trial and in the future);

     g.  Physical pain and suffering (until trial and in the future);

     h.  Physical impairment (until trial and in the future);

     i.  Exemplary/Punitive damages;

     j.  Attorneys' fees;

     k.  Costs of this action; and

     l.  Pre-judgment and all other interest recoverable.

     m.  and such other and further relief to which Jane Doe (J.S.H.) may, in law or in equity, show herself to be justly entitled.

## **JURY TRIAL**

Plaintiff Jane Doe (J.S.H.) hereby respectfully demands a trial by jury of all issues so triable.

Respectfully submitted,

**JENNER LAW, P.C.**

/s/ Robert K. Jenner
Robert K. Jenner (Fed Bar No. 04165)
Kathleen R. Kerner (Fed. Bar No. 18955)
Elisha N. Hawk (Fed. Bar No. 29169)
3600 Clipper Mill Road, Suite 240
Baltimore, Maryland 21211
Phone: (410) 413-2155
Fax: (410) 982-0122
rjenner@jennerlawfirm.com
kkerner@jennerlawfirm.com
ehawk@jennerlawfirm.com


**ANNIE MCADAMS PC**

/s/ Annie McAdams
Annie McAdams | SBN 24051014
(*pro hac vice* forthcoming)
2900 North Loop West
Suite 1130
Houston Texas 77092
(713) 785-6262
(866) 713-6141 Facsimile
*annie@mcadamspc.com*

**PROVOST ✶ UMPHREY LAW FIRM**

BRYAN O. BLEVINS, JR. (SB 02487300)
(*pro hac vice* forthcoming)
350 Pine Street, Ste., 1100
Beaumont, TX 77701
Phone: (409) 835-6000
bblevins@pulf.com

and

**SICO HOELSCHER HARRIS, LLP**

/s/ David Harris
David E. Harris | SBN 24049273

36

(*pro hac vice* forthcoming)
Preston Burns | SBN 24086052
(*pro hac vice* forthcoming)
819 N. Upper Broadway
Corpus Christi, Texas 78401
(361) 653-3300
(361) 653-3333 Facsimile
*dharris@shhlaw.com*
*pburns@shhlaw.com*

**ATTORNEYS FOR PLAINTIFF**