**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

J.S.H.,

    Plaintiff,

    v.

CHOICE HOTELS
INTERNATIONAL, INC., *et al.*,

    Defendants.

Case No. 3:25-CV-851

**CHOICE HOTELS INTERNATIONAL, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Choice Hotels International, Inc. ("Choice" or "Franchisor") moves to dismiss Plaintiff's First Amended Complaint. *See* Doc. No. 159 ("FAC"). Plaintiff has brought two claims, both under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), against Choice. Both claims continue to be plagued by the problems previously identified by Choice and Defendant GP4 Property Owner, LLC ("GP4" or "Franchisee") in multiple rounds of earlier briefing. *See* Doc. Nos. 36, 85 (Choice briefs); 37, 118 (GP4 briefs).

Plaintiff alleges that she was trafficked in a Jacksonville hotel (the "Hotel") owned and operated by GP4, which had a contractual Franchise Agreement with Choice. As the Agreement is the sole reason that Choice has been named in this litigation, the Court may consider it when evaluating Plaintiff's claims. Such consideration is well warranted given that the Maryland federal Court which transferred this matter found the allegations regarding Choice to be deeply

1

inaccurate. Indeed, other federal Courts in Maryland considering nearly identical complaints filed by the same Plaintiff's counsel reached the same conclusion.

On the merits, both of Plaintiff's claims against Choice are invalid. The first claim is a "participant" or "beneficiary" claim under the TVPRA, which requires that Plaintiff plausibly allege that Choice "knowingly benefit[ted] . . . by receiving anything of value from participation in a venture which [Choice] knew or should have known has engaged in an act [of trafficking]." 18 U.S.C. 1595(a). The Eleventh Circuit, this Court, and other federal courts in Florida have dismissed claims virtually identical to Plaintiff's. Plaintiff's effort to plead around this holding by claiming that Choice's Agreement with GP4 constituted a "commercial venture"— a term that appears nowhere in the TVPRA—conflicts with the statute, precedent, and common sense.

Plaintiff's second claim is a vicarious liability claim based on the theory that GP4 acted as Choice's agent, thus rendering Choice liable for GP4's conduct. That claim fails both because GP4 also did not violate the TVPRA and, moreover, nothing in the Agreement created an agency relationship. Rather, the Agreement explicitly disclaimed such a relationship and left the day-to-day operation of the Hotel in GP4's hands alone.

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991). While the court should "accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*), this tenet is "inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy the pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must dismiss a claim where there is an absence of sufficient factual matter to state a facially plausible claim to relief. *Id.* A claim has facial plausibility only when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### ARGUMENT

### I.   The Court Should Consider the Underlying Franchise Agreement.

Though motions to dismiss normally only look to a Plaintiff's pleadings, "[t]he Court is permitted to consider documents outside of the pleadings without converting the motion into a motion for summary judgment, if such documents are central to the plaintiff's claim and undisputed as to authenticity." *Keen v. Bovie Med. Corp.*, No. 8:12–cv–305, 2012 WL 12905603, at *3 (M.D. Fla. Sept. 27, 2012) (citing *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th

3

Cir. 2010)); *see SFM Holdings*, 600 F.3d at 1337 (upholding inclusion of "documents mentioned in the complaint").

The Franchise Agreement in this case easily meets these conditions. *See* Doc. Nos. 56.4 (Franchise Agreement, "Agreement" or "FA") (filed under seal), 56.5 (Assignment of Interest) (filed under seal). There is no question as to its authenticity. Plaintiff has never contested the genuineness of the Agreement and the Maryland Court relied upon it in deciding to transfer this case. *See, e.g.*, Doc. No. 71, at 10.

More fundamentally, the Agreement is "central" to Plaintiff's claims against Choice, *Keen*, 2012 WL 12905603, at *3, both of which are based entirely on that contract. This is not a matter of conjecture. Plaintiff's counsel took this exact position when seeking to keep this case in Maryland, arguing to Judge Chuang that the "statutory elements are interwoven with the franchise agreement." Ex. A, Tr. of Arg. 44:11–12 (June 10, 2025); *see id.* 53:20–21 (Plaintiff's counsel arguing that TVPRA "venture" "arises out of the franchise agreement"). Put simply, without the Franchise Agreement, Choice could not be before this Court.

For that reason, the Court can and should consider that document, rather than Plaintiff's self-serving and inaccurate characterizations of it. Plaintiff's inaccuracies are also not a matter of conjecture. Judge Chuang's memorandum in this matter found that several of Plaintiff's allegations are "contradicted by the franchise agreement." Doc. No. 71, at 19; *see id.* at 13. In a recent opinion considering a nearly identical pleading from the same counsel, Judge Chuang

made the same observation. *See A.E.W. v. Choice Hotels Int'l, Inc.*, No. 24-3769-TDC, 2025 WL 2468510, at *7, *9 (D. Md. Aug. 27, 2025) ("[T]he franchise agreement contradicts these claims . . . ."). And, in yet another similar case brought by Plaintiff's counsel, Chief Judge Russell of the District of Maryland was still more blunt: "The Court finds that Doe's allegations are plainly contradicted by the model franchising agreement." *J.L.K. v. Choice Hotels Int'l, Inc.*, No. GLR-24-3774, 2025 WL 2197035, at *3 (D. Md. Aug. 1, 2025).

There are also no countervailing reasons against the consideration of the Agreement. Plaintiff certainly cannot claim a lack of notice or knowledge as to that document. If anything, given her recent amendment, Plaintiff has no excuse for why she has not removed the misleading and inaccurate allegations she makes regarding the Agreement. And to the degree that Plaintiff intends to argue that the Agreement is partial as it references, but does not include, Choice's brand standards, called the "Rules and Regulations," Choice can submit those under seal for the Court and Plaintiff's review (though Plaintiff's counsel is well familiar with their contents from other litigation against Choice).

Plaintiff's claims against Choice are premised entirely on the Agreement. She now asks the Court to blind itself to the very text of that contract in favor of her characterizations of it, characterizations which two other judges have found to be "contradicted" by the words of the Agreement. The Court should reject Plaintiff's invitation and consider the Agreement itself.

## II.   Count II: Plaintiff's Participant Claim is Foreclosed by Circuit Precedent

Plaintiff's first claim against Choice is a "participant" (or "beneficiary") claim brought under the TVPRA. *See* FAC ¶¶ 89–92. That provision creates a cause of action for a "victim" of trafficking against "whoever knowingly benefits . . . financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act [of trafficking]", as defined in 18 U.S.C. § 1591(a) in this case. 18 U.S.C. § 1595(a). To make out a participant claim, a plaintiff must show that the defendant "(1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA as to the [plaintiff]; and (4) the [defendant] knew or should have known that the venture violated the TVPRA as to the [plaintiff]." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021).

Importantly, the Eleventh Circuit twice rejected claims virtually identical to Plaintiff's when brought against hotel franchisors like Choice (in *Doe #1 v. Red Roof Inns, Inc.*, which involved four separate complaints consolidated for briefing) and against hotel owner/operators (in *K.H. v. Riti, Inc.*). In both opinions, the Court of Appeals "made clear" that "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture and observing signs of sex trafficking 'is not the same as participating in it.'" *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *4 (11th Cir. Feb. 9, 2024) (quoting *Red Roof*, 21 F.4th at 727); *see also Bridges v. Poe*, 155 F.4th 1302, 1320 (1th Cir. 2025) (rejecting

6

TVPRA claim because defendants were "unaware of the alleged [] scheme"). These holdings are consistent with the rulings of other Courts of Appeals to consider these types of claims. *See Doe #1 v. Apple, Inc.*, 96 F.4th 403, 415–16 (11th Cir. 2024); *G.G. v. Salesforce.com, Inc.,* 76 F.4th 544, 562–63 (7th Cir. 2023). And they are consistent with the rulings of most District Courts to consider these issues.[1]

---

[1] The vast majority of District Courts to address TVPRA claims against franchisors, similar to those found in the FAC, dismissed them. *See, e.g., Christina T. v. Bellagio LLC*, No. 2:25-CV-145, 2025 WL 2962780, at *5 (D. Nev. Oct. 17, 2025); *N.G. v. G6 Hosp. Prop. LLC*, No. 6:24-cv-2379-JA-DCI, 2025 WL 1332210 (M.D. Fla. May 7, 2025); *A.L. v. G6 Hosp. Prop. LLC*, No. 25-80056-CV, 2025 WL 1151750 (S.D. Fla. Apr. 18, 2025); *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624 (E.D. Mich. 2024); *Jane Doe (A.S.) v. Wyndham Hotels & Resorts, et al.*, No. 6:23-cv-033-C, 2024 WL 6069251 (N.D. Tex. June 10, 2024); *Doe v. Wyndham Hotels & Resorts*, No. 8:23-cv-01554-JVS (JDEX), 2024 WL 2104596 (C.D. Cal. Feb. 28, 2024); *B.J. v. G6 Hosp., LLC, et al.*, No. 22-cv-03765-MMC, 2023 WL 6120682 (N.D. Cal. Sept. 18, 2023); *A.B. v. Extended Stay Am. Inc.*, No. 3:22-CV-05939-DGE, 2023 WL 5951390 (W.D. Wash. Sept. 13, 2023); *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-cv-108-TWT, 2023 WL 5621913 (N.D. Ga. Aug. 30, 2023); *K.M. v. CPA Hotels of Atlanta, LLC*, No. 1:23-cv-190-TWT, 2023 WL 5747490 (N.D. Ga. Aug. 30, 2023); *A.D. v. Choice Hotels Int'l, Inc., et al.*, No. 2:22-cv- 646-JES-NPM, 2023 WL 5510090 (M.D. Fla. Aug. 25, 2023); *A.D. v. Choice Hotels Int'l, Inc., et al.*, No. 2:22-cv-647, 2023 WL 5510266 (M.D. Fla. Aug. 25, 2023); *A.D. v. Choice Hotels Int'l, Inc., et al.*, No. 2:22-cv-648-JES-NPM, 2023 WL 5510267 (M.D. Fla. Aug. 25, 2023); *A.D. v. Marriott Int'l, Inc.*, No. 2:22-cv-644, 2023 WL 5510270 (M.D. Fla. Aug. 25, 2023); *A.D. v. Marriott Int'l, Inc.*, No. 2:22-cv-645-JES-NPM, 2023 WL 5510268 (M.D. Fla. Aug. 25, 2023); *Lundstrom v. Holiday Hosp. Franchising, LLC*, No. 1:22-cv-056, 2023 WL 4424725 (D.N.D. May 22, 2023); *L.H. v. Marriott Int'l Inc.*, 604 F. Supp. 3d 1346 (S.D. Fla. 2022); *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018 (D. Or. 2021); *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021); *J.L. v. Best Western Int'l Inc.*, 521 F. Supp. 3d 1048 (D. Colo. 2021); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697 (E.D. Mich. 2020); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020); *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020); *C.K. v. Wyndham Hotels & Resorts, Inc.*, No. 3:19-cv-1412-J-34MCR, 2020 WL 5523849 (M.D. Fla. July 7, 2020); *J.C. v. Choice Int'l*, No. 20-cv-00155-WHO, 2020 WL 3035794 (N.D. Cal. June 5, 2020); *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-CV-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020), *aff'd sub nom. Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021). By contrast, most of the decisions that did not dismiss the plaintiffs' claims at the motion-to-dismiss stage were issued by a single federal judge. *See, e.g.*, *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04933, 2022 WL 17363234 (S.D. Ohio Dec. 1, 2022) (Marbley, C.J.). That court's approach represents the extreme minority position and is not even followed by courts in the same state. *See S.C. v. Wyndham Hotels*

*(footnote continued on following page …)*

*Red Roof* and *Riti* foreclose Plaintiff's claim. At core, Plaintiff's theory of the case is that Choice rented rooms to her traffickers when it should have known that she was being trafficked. *See, e.g.*, FAC ¶¶ 76–77. But this is precisely the theory that both *Red Roof* and *Riti* rejected. And Plaintiff cannot plead around the logic of these precedents by recharacterizing the relevant TVPRA "venture" as "commercial," rather than "trafficking," in nature. That distinction finds no purchase in the statute.

### a. *Red Roof* and *Riti* Reject Plaintiff's Theory of "Participation in a Venture."

In *Red Roof*, four separate plaintiffs brought individual participant claims against several hotel franchisors, including Choice (as to three of the four plaintiffs), on grounds that "each of the franchisors 'owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms' at the [subject] hotels." 21 F.4th at 726. The plaintiffs also alleged that "the franchisors investigated the individual hotels, took remedial action when revenue was down, read online reviews mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees who were allegedly involved in facilitating sex trafficking at the hotels." *Id.* at 727.

---

& *Resorts, Inc.*, 728 F. Supp. 3d 771 (N.D. Ohio 2024); *R.C. v. Choice Hotels Int'l, Inc.*, No. 5:23-cv-00872, 2024 WL 1443412 (N.D. Ohio Apr. 2, 2024); *see also S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-cv-00871, 2024 WL 2186173 (N.D. Ohio May 15, 2024).

The Eleventh Circuit rejected all four of these claims. Relying on dictionaries, the Court of Appeals ruled that "'participation in a venture' requir[ed] that the Does allege that the franchisors took part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 725. The plaintiffs failed to do this, the Court explained. As to the rentals, the "allegations may [have] suggest[ed] that the franchisors financially benefitted from renting hotel rooms to the Does' sex traffickers. But they d[id] nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures." *Id.* at 726–27. And, as to the other allegations, the Court was still more blunt: "None of these allegations suggest that the franchisors participated in an alleged common undertaking or enterprise with the Does' sex traffickers or others at the hotel who violated the statute." *Id.* at 727. As the Court put it: "observing something is not the same as participating in it." *Id.*

The Eleventh Circuit also applied this reasoning to hotel owner/operators in *Riti*. There, the plaintiff alleged that: "(1) Riti [the owner/operator] knew or should have known that sex trafficking was occurring at its hotel—based on online reviews, police reports, and visible indicators—yet (2) Riti continued to engage in a hotel business relationship with and collect room rental revenue from [the trafficker] for approximately four years." 2024 WL 505063, at *3. Again, the Court of Appeals found these allegations insufficient. Even as to the owner/operator, *Red Roof* controlled: "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture and observing signs of sex

9

trafficking 'is not the same as participating in it.'" *Riti*, 2024 WL 505063, at *4 (quoting *Red Roof*, 21 F.4th at 727).

*Red Roof* and *Riti* dispose of Plaintiff's claim. The centerpiece of Plaintiff's claim is that "Choice Hotels directly participated in and retained day-to-day control over renting rooms at the subject [Hotel]." FAC ¶ 76. The Franchise Agreement makes clear that this is incorrect, *see infra* at 22–23, but even if it were accurate, that is simply not "participation," as *Red Roof* and *Riti* have made clear. As the D.C. Circuit has similarly explained, "something more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture." *Apple, Inc.*, 96 F.4th at 415. If anything, the link is still more tenuous here because Plaintiff does not, and cannot, allege that *Choice*, rather than the Franchisee, rented rooms to her or her traffickers. *See* FAC ¶ 66.

Plaintiff's other allegations—of activities which purportedly "influenced whether and to what extent trafficking occurred at the hotels [*sic*]," FAC ¶ 75—are equally unavailing. Many of these purported Choice activities are contradicted by the Agreement, which specifically assigned compliance with laws and safety matters to the Franchisee. *See infra* at 22–23. But the deeper problem is that the statute does not speak in terms of whether a party's actions "influence" the possibility of trafficking; it requires "participation in a venture." 18 U.S.C. § 1595(a). Plaintiff cannot substitute the statutory requirement of "participation" for a free-ranging, negligence-type inquiry. *See Central Bank of Denver, N. A. v. First*

10

*Interstate Bank of Denver, N. A.*, 511 U.S. 164, 173 (1994) ("[T]he text of the statute controls our decision.").

Even beyond these fundamental issues, *Red Roof* rejected largely similar allegations. Those plaintiffs specifically alleged that those defendant franchisors (including Choice) investigated the hotels (*compare* FAC ¶ 75(h)); controlled training (*compare id.* ¶¶ 75(g), (i)); monitored signs of trafficking (*compare id.* ¶ 75(f)); and took action when revenues were affected (*compare id.* ¶¶ 75(d)–(f)). *See* 21 F.4th at 727. The remaining alleged acts relate to typical brand standards in the hospitality industry, such as the standards for housekeeping or the provision of internet services to guests. *See* FAC ¶¶ 75(j)–(l). These have nothing to do with "participation in a venture." *See, e.g., Mia v. Kimberly-Clark Corp.*, No. 1:22-cv-02353, 2025 WL 752564, at *3–*4 (D.D.C. Mar. 10, 2025) (no TVPRA liability when the defendant "allegedly provided [the labor trafficker] with materials" as that was only "an additional arms-length transaction to ensure that its supplier had the materials needed to produce th[e] goods"). In this Circuit, a hotel franchisor does not become liable under the TVPRA merely because the owner/operator "rent[ed] hotel rooms to the [plaintiff's] sex traffickers." *Red Roof*, 21 F.4th at 727.

### b. Plaintiff Has Not Pleaded Cognizable "Ventures."

Plaintiff has also failed to adequately allege a "venture." 18 U.S.C. §1595(a). A TVPRA "venture" is "a common undertaking or enterprise involving risk and potential profit." *Red Roof*, 21 F.4th at 725. Plaintiff pleads two purported ventures. The first is a "trafficking venture" among Choice, its Franchisee, and "traffickers"

11

at the subject Hotel. *See* FAC ¶ 81. The second is a "commercial venture" between Choice "with [the] Franchisee Defendant operating the [Hotel]." *Id.* ¶ 82.

In reality, there is no difference between these ventures. They turn on the same allegations and conduct: that Franchisee rented rooms to Plaintiff's trafficker. Plaintiff has nonetheless pleaded the commercial venture in an effort to avoid *Red Roof* and *Riti*, as the Court of Appeals in the former case declined to consider an unpreserved argument regarding "commercial ventures." *See Red Roof*, 21 F.4th at 727. This distinction is without merit. The reasoning of these cases and others undermines Plaintiff's distinction.

1.      Plaintiff's "trafficking venture" is easily dispensed with, as she does not plead any contact between Choice and herself or her unidentified traffickers. Rather, her and her traffickers' interactions were with the Franchisee's employees alone. *See, e.g.*, FAC ¶¶ 66–67. "Without direct contact, there can be no direct liability." *S.C. v. Wyndham Hotels and Resorts, Inc.*, 728 F. Supp. 3d 771, 778 (N.D. Ohio 2024). After all, in such circumstances, there is nothing "common" among the venture's purported participants, particularly as to allegations of trafficking. *Red Roof*, 21 F.4th at 725; *see Mueller v. Deutsche Bank Aktiengesellschaft*, 777 F. Supp. 3d 329, 338 (S.D.N.Y. 2025) ("Without having interacted with their allegedly ISIS-connected accountholders any more or differently than they would with their many other customers, the defendants cannot be said to have 'tak[en] part or shar[ed] in an enterprise or undertaking' with them.") (quoting *Apple Inc.*, 96 F.4th at 415).

More generally, the Courts of this Circuit have squarely rejected even stronger allegations as to hotel *operators*. For example, just last year, this Court considered a similar TVPRA case, but with the added allegation that "'a male front desk employee . . . would come to the room to smoke crack and get a sex act performed on him.'" *N.G. v. G6 Hospitality Prop. LLC*, No. 6:24-cv-2379, 2025 WL 1332210, at *2 (M.D. Fla. May 7, 2025). As the Court noted, this "does not explain how this indicates Defendant's participation in a venture with her traffickers." *Id.* In another recent case, a Florida District Court considered the still stronger allegation that the trafficker "'forced [plaintiff] to have sex with more than one staff member of Defendant.'" *A.L. v. G6 Hospitality Prop. LLC*, No. 25-80056-CV, 2025 WL 1151750, at *1 (S.D. Fla. Apr. 18, 2025). The Court observed:

> [W]hile Plaintiff's alleged abuse at the hands of hotel staff may suggest that her trafficker was in cahoots with some unknown staff, it does not suggest a venture existed between Plaintiff's trafficker and the *hotel*—the named party. Plaintiff does not claim Defendant was engaged in a venture with Plaintiff's trafficker through its staff; only that the staff's abuse may be evidence Defendant *knew* about Plaintiff's status as a victim. This does not establish a venture.

*Id.* at *3 (emphasis in original).[2] That reasoning has still more force here, where not only were the staff Franchisee's employees, not Choice's, but Plaintiff has not

---

[2] This can be contrasted with Plaintiff's new allegations, which principally suggest that there were physical features of the hotel which her traffickers preferred (FAC ¶ 65) and that staff knew her traffickers and purportedly gave them the same rooms and additional towels and tissues for their stays (*id.* ¶ 64). If the participation of staff in sexual acts does not constitute "participation in a venture," then it follows, *a fortiori*, that neither can these more innocuous allegations.

alleged any interactions at all with anyone associated with Choice. Plaintiff's trafficking venture should be rejected.

**2.** Plaintiff's "commercial venture" fares no better. As noted above, it is an effort to plead around *Red Roof*, where the Court of Appeals declined to consider an argument that "commercial ventures" could suffice under the TVPRA. *See* 21 F.4th at 727. Yet there is nothing that distinguishes the commercial venture from the "trafficking venture." It is based on identical allegations as the trafficking venture: the purported rental of rooms to Plaintiff's traffickers. *See* FAC ¶ 82(b) (pleading the "renting [of] rooms to traffickers"). It is simply a gloss on Plaintiff's first venture.

Even taken on its own terms, the commercial venture is still less plausible. For the venture to be legally sufficient, a member of the venture must "ha[ve] engaged in an act [of trafficking]." 18 U.S.C. § 1595(a). Through Count I, Plaintiff alleges that GP4 engaged in such an act, *see* FAC ¶ 91, either by "harbor[ing]" Plaintiff, in violation of 18 U.S.C. § 1591(a)(1), or by engaging in a criminal venture with her trafficker, under § 1591(a)(2).[3] GP4 has already explained why Plaintiff has not properly alleged these acts. *See* Doc. Nos. 34-1, at 10, 17–18; 118, at 13–15, 23–25. In brief, "harboring" is an act that requires some form of concealment beyond the mere rental of rooms[4]; participation in a criminal venture requires

---

[3] A criminal venture under 18 U.S.C. § 1591(a) contains additional knowledge and act requirements different from those found in the TVPRA's civil liability provision of § 1595(a).

[4] Courts have held as much as to the TVPRA. *See, e.g., L.M. v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235-FL, 2024 WL 4204906, at *5 (E.D.N.C. Sept. 16, 2024) ("[T]he Fourth
*(footnote continued on following page …)*

14

allegations that GP4 "knowingly assist[ed], support[ed], or facilitate[d]" Plaintiff's traffickers' acts[5]; and both require actual knowledge of trafficking and the use of force, fraud or coercion.[6] None of these elements are pleaded here and their absence is fatal to Plaintiff's claim.

Nor does Plaintiff escape the reasoning of above cited cases simply because she affixes the adjective "commercial" to the term "venture." The TVPRA uses only the term "venture," without distinguishing among different types of ventures. As a result, the reasoning of *Red Roof*, *Riti*, *N.G.*, and *A.L.* applies with equal force to Plaintiff's commercial venture.

More fundamentally, Plaintiff's theory would expand the notion of a "venture" to encompass virtually any commercial relationship with even a passing connection to trafficking activity. The local business which repairs Franchisee's hotel, the IT

---

Circuit has made clear that this verb ['harbor'], in the criminal context, does not mean simply 'to house.'"). They have also taken this position as to the use of the term in comparable criminal immigration statutes. *See DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241, 247 (3d Cir. 2012) ("We do not know of any court of appeals that has held that knowingly renting an apartment to an alien lacking lawful immigration status constitutes harboring."); *see also Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 278–79 (4th Cir. 2024); *United States v. Zheng*, 87 F.4th 336, 343 (6th Cir. 2023); *United States v. McClellan*, 794 F.3d 743, 750-51 (7th Cir. 2015); *United States v. Vargas-Cordon*, 733 F.3d 366, 382 (2d Cir. 2013); *United States v. Tipton*, 518 F.3d 591, 595 (8th Cir. 2008); *United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007); *United States v. You*, 382 F.3d 958, 965-66 (9th Cir. 2004).

[5] 18 U.S.C. § 1591(e)(4).

[6] *See, e.g.*, *United States v. Todd*, 627 F.3d 329, 333–34 (9th Cir. 2010) ("The knowledge required of the defendant [for § 1591(a)(1)] is such that if things go as he has planned, force, fraud or coercion will be employed to cause his victim to engage in a commercial sex transaction."); *G.N.C. v. Uniquest Hospitality, LLC*, No. 23-cv-7980 (PKC), 2024 WL 4149251, at *3 (S.D.N.Y. Sept. 11, 2024) ("[A] claim of 'perpetrator' liability . . . requires actual knowledge of the sex trafficking activity . . . .").

support firm that provides internet services, and the contractor which supplies housecleaning services are all also in an illicit "commercial venture" by Plaintiff's logic. That contravenes the meaning of the statute, as one District Court ruled: "an individual cannot be found guilty of venture liability . . . where he participates in a legitimate business venture and a partner in that legitimate business venture commits a sex trafficking act that incidentally benefits the legitimate business venture." *Powell v. Western Express, Inc.*, 795 F. Supp. 3d 1032, 1038–39 (M.D. Tenn. 2025) (finding no liability because "[n]o one else agreed to engage in sex-trafficking").

This general concept—that a legitimate business's incidental connection to criminal activity does not create liability—has been repeatedly embraced by the Supreme Court in recent years. *See Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 292 (2025) ("[R]outine and general activity that happens on occasion to assist in a crime—in essence, 'incidentally'—is unlikely to count as aiding and abetting.") (citation and internal quotation marks omitted). "So, for example, an 'ordinary merchant[ ]' does not 'become liable' for all criminal 'misuse[s] of [his] goods,' even if he knows that in some fraction of cases misuse will occur." *Id.* (quoting *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 489 (2023)). That same logic should control here.[7]

---

[7] To the degree that Plaintiff intends to rely on the Seventh Circuit's decision in *G.G.. v. Salesforce.com, Inc.*, that case is distinguishable. There, the Court of Appeals upheld a § 1595(a) participant claim against Salesforce, a software developer. The claim alleged that

*(footnote continued on following page …)*

16

### c. Plaintiff Does Not Adequately Plead Choice's Knowledge.

Knowledge is a key element of a participant claim under the TVPRA. *See* 18 U.S.C. § 1595(a). A plaintiff must allege that "the defendant had constructive or actual knowledge that the [venture] violated the TVPRA *as to the plaintiff.*" *Red Roof*, 21 F.4th at 719 (emphasis added). Accordingly, Plaintiff must show that Choice "'knew or should have known' about *her* trafficking." *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-CV-00871, 2024 WL 277117, at *1 (N.D. Ohio Jan. 25, 2024) (emphasis added) (quoting 18 U.S.C. § 1595(a)).For this element, "general knowledge about sex trafficking's prevalence is not enough on its own to show that [a defendant] should have known about [a plaintiff's] trafficking." *Id.*; *see Villalobos v. Telemundo Network Grp., LLC*, No. 22 Civ. 7665, 2025 WL 2687948, at *4 (S.D.N.Y. Sep. 19, 2025) ("Cases where a plaintiff has sufficiently pleaded a defendant's awareness of sex trafficking under the TVPA generally have involved allegations of warning signs of *sex trafficking in particular.*") (emphasis added); *S.J. v. Choice Hotels International, Inc.*, 473 F. Supp. 3d 147, 154

---

Salesforce "'participated in commercial ventures' with Backpage," which "law enforcement, United States Attorneys General, and every state Governor had publicly identified . . . as the biggest and most notorious sex trafficking and pimping website in the United States." 76 F.4th at 555, 562 (quoting *Red Roof*, 21 F.4th at 727) (some internal quotation marks omitted). As part of this alleged venture, "'Salesforce sold Backpage targeted solutions addressed to the needs of Backpage's business,' repeatedly assessed Backpage's 'operational needs,' and provided 'active, ongoing support' that was 'tailored' to those needs." *Id.* at 562. *Salesforce* thus stands for the proposition that participation in a "commercial venture" may be sufficient for TVPRA purposes when the non-trafficking party provides "tailored" support to a counter-party whose business "[i]s almost exclusively a sex-trafficking business that ha[s] engaged in multiple acts in violation of Section 1591, nay, whose business model [i]s built upon systematic and widespread violations of Section 1591." *Id.* at 560–62.

17

(E.D.N.Y. 2020) ("[Franchisors'] general[] aware[ness] that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'"); *E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. Jan. 4, 2021). Thus, a participant claim must be dismissed where, as here, Plaintiff fails to "allege facts showing [Choice] knew or should have known of *her trafficking*" specifically. *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, at *6 (N.D. Cal. Jul. 30, 2020) (emphasis added); *see also Doe #9 v. Wyndham Hotels and Resorts*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 20, 2021); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 705 (E.D. Mich. 2020).

Much of Plaintiff's FAC is composed of snippets of news reports and reviews, including some regarding unrelated alleged trafficking at other wholly unrelated properties, with different owners and operators. *See, e.g.*, FAC ¶¶ 50–51. Plaintiff also cites Choice's efforts, from 2008 onward, to halt trafficking at its properties. *See id.* ¶ 54.[8] As Plaintiff admits, these only indicate that Choice has general knowledge that trafficking occurs in the industry. *See id.* ¶ 49. But awareness that

---

[8] In making these allegations, Plaintiff claims—falsely and without supporting reference—that Choice "delayed for years before implementing anti-trafficking training at its hotels." FAC ¶ 54. It is impossible for Plaintiff or her counsel to make allegations regarding Choice's internal trainings without having relied on Choice documents, including franchise agreements. Such reliance supports this Court's consideration of the Franchise Agreement. *See supra* at 3–5. If Plaintiff's position is that she did not consider such documents, then her allegation crosses the line from one based on "the best of the [plaintiff's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," to pure, unjustifiable speculation. Fed. R. Civ. P. 11(b).

trafficking exists across the hotel industry does not suffice to plead Choice's knowledge of Plaintiff's *own* alleged trafficking. *See A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1026 (D. Or. 2021); *H.G.*, 489 F. Supp. 3d at 705.

To go beyond her collection of news articles and online reviews, Plaintiff relies on a generalized list of so-called "red flags" that she claims are markers of trafficking activity. *See* FAC ¶ 66. A wealth of cases have held that allegations of even graver "red flags" do not suffice to show knowledge on the part of hotel operators, much less remote franchisors like Choice. *See, e.g.*, *S.J.C. v. ESA P Portfolio, LLC*, No. 1:24-CV-02423-JPB, 2024 WL 4808137, at *5 (N.D. Ga. Nov. 15, 2024) (rejecting allegations similar to Plaintiff's because there were "no allegations that hotel staff observed her trafficker forcefully bringing her to the hotel or abusing her in any way" or that the plaintiff "ever had visible injuries or that she ever acted nervous or afraid around hotel employees"). Regardless, even if hotel staff observed the "red flags" cited by Plaintiff, *see* FAC ¶ 67, that would still not show knowledge because, as numerous courts have found, "[s]uch allegations, however, are equally consistent with criminal conduct other than sex trafficking, e.g., prostitution." *B.J. v. G6 Hospitality, LLC*, No. 22-cv-03765, 2023 WL 3569979, at *5–*6 (N.D. Cal. May 19, 2023); *see also E.S.*, 510 F. Supp. 3d at 428; *Doe #9*, 2021 WL 1186333, at *2; *S.J.*, 473 F. Supp. 3d at 150–51. That is especially true with Plaintiff's "red flags," none of which reflect any observable indicia of the force, fraud, or coercion necessary for trafficking. *See* FAC ¶ 66.

Nor does Plaintiff plausibly explain how Choice, located hundreds of miles away in Maryland, could have been aware of these highly localized "red flags" in Florida. Plaintiff's sole explanation is that Choice's knowledge can be inferred from a purported "policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking." *Id.* ¶ 69. No such policy exists in the Agreement and Plaintiff offers no other mechanism by which Choice could have been aware. [9]

There are two problems with Plaintiff's theory. The first is that even if one assumes that the Franchisee's staff communicated exactly what Plaintiff claims they observed—an unstated and implausible assertion at best—that would, at most, suggest commercial sexual activity at the Hotel, but not knowledge of trafficking, much less Plaintiff's own trafficking. *See supra* at 19.

The second problem is that there is nothing like the policy or protocol described by Plaintiff in the Franchise Agreement. That Agreement specifically assigned compliance with applicable laws to the Franchisee: "You must comply with

---

[9] Other mechanisms would also have been insufficient. *See K.B. v. G6 Hospitality, LLC*, No. 1:23-CV-2597-TWT, 2024 WL 4701891, at *3 (N.D. Ga. Nov. 5, 2024) (explaining that receipt of "real-time guest and property data," and "inferring that such data included [plaintiff's] data individually (as opposed to metadata)" would be "insufficient" as "[a]t most, this data would provide constructive knowledge that commercial sex activity was occurring, but it would not show actual or constructive knowledge that 'means of force, threats of force, fraud, coercion' or any combination thereof were used to cause [plaintiff] to engage in any commercial sex acts"); *A.B. v. Shilo Inn, Salem, LLC*, No. 3:23-cv-00388-IM, 2023 WL 5237714, at *5–*6 (D. Or. Aug. 15, 2023) (noting "[p]laintiff claims that the Residence Inn Portland had numerous surveillance cameras throughout the hotel displaying 'unusual and suspicious' behavior" and that she "encountered the same hotel staff over the period in which she was trafficked" but identifying "that Plaintiff fails to allege facts to establish that any particular Residence Inn employee *witnessed* these signs or was otherwise aware of Plaintiff's trafficking").

all applicable federal, state, and local laws, rules and regulations applicable to you and to the Hotel." FA at 11. And it made clear that Franchisee was to "[e]stablish and maintain a high ethical and moral standard in connection with [its] operation of the Hotel." *Id.* at 4. Nowhere did the Franchisee Agreement create an obligation on the Franchisee to report any and all suspicious activities. Indeed, such a requirement would have been inconsistent with the Franchisee's "operation of the Hotel." *Id.*

As Plaintiff cannot show Choice's knowledge, this claim should be dismissed.

### III.    Count III: Plaintiff Fails to Plead Vicarious Liability Because the Franchisee Was Not Choice's Agent.

Plaintiff's second count against Choice is for vicarious liability on the theory that the Franchisee was Choice's agent. *See* FAC ¶¶ 98–103. There are two threshold problems with this theory. First, nothing in the text of the TVPRA explicitly recognizes a vicarious liability claim, *see* 18 U.S.C. 1595(a), and the Supreme Court has cautioned against reading forms of "secondary liability" into federal statutes. *See, e.g., Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994). The Court should not do so here. Second, Plaintiff does not plausibly plead TVPRA claims against the Franchisee, whether as a perpetrator or participant. *See, e.g., E.S.*, 510 F. Supp. 3d at 428. That failure is dispositive of her vicarious liability claim. *See id.*[10]

More generally, Plaintiff fails to allege an agency relationship between Choice and its Franchisee. Within the franchise context, vicarious liability requires

---

[10] *See also A.B.*, 532 F. Supp. 3d at 1028; *A.B.,* 484 F. Supp. 3d at 940–41.

21

plausible allegations of agency and, therefore, "control over the *actual day-to-day work* occurring at that location." *K.O. v. G6 Hospitality, LLC*, 728 F. Supp. 3d 624, 650 (E.D. Mich. 2024).[11] As one Court of Appeals put it, "[a] franchisor must be permitted to retain such control as is necessary to protect and maintain its trademark, trade name and goodwill, without the risk of creating an agency relationship with its franchisees." *Walker v. Pacific Pride Serv., Inc.*, 341 F. App'x 350, 351 (9th Cir. 2009) (internal quotation marks omitted); *see DiFederico v. Marriott Int'l, Inc.*, 130 F. Supp. 3d 986, 992 (D. Md. 2015) (discussing limits on franchisor liability for personal injuries at a hotel, including case involving Choice).

Here, Plaintiff fails to plausibly allege an agency relationship between Choice and the Franchisee. At the outset, the Franchise Agreement explicitly disclaims such a relationship: "You [the Franchisee] are an independent contractor. Nothing in this Agreement makes, or is intended to make, either party an agent, legal representative, subsidiary, joint venturer, partner, employee, independent contractor or servant of the other." FA at 11.

Moreover, the Agreement contains a host of provisions that assign the day-to-day management of the Hotel to the Franchisee:

- "'Opening Date' means the date that you [Franchisee] begin to rent sleeping rooms to the public at the Hotel under this Agreement." *Id.* at 1.

---

[11] Though courts vary in whether they apply federal or State law, both the federal common law and Florida law dictate the same result. *See Goldschmidt v. Holman*, 571 So.2d 422, 424 n.5 (Fla. 1990) (citing Restatement (Second) of Agency § 1 (1957)); *Mobil Oil Corp. v. Bransford*, 648 So.2d 119, 121 (Fla. 1995).

- "[Franchisee will] [c]onstruct, operate, furnish, maintain and advertise the Hotel . . . ." *Id.* at 4.

- "[Franchisee will] [e]stablish and maintain a high ethical and moral standard in connection with [its] operation of the Hotel." *Id.*

- "You [Franchisee] must comply with all federal, state, and local laws, rules and regulations applicable to you and to the Hotel." *Id.* at 11.

- "You [Franchisee] are solely responsible for exercising ordinary business control over the Hotel, including personnel matters of Hotel employees and pricing of rooms and other services at your Hotel." *Id.* at 13.

Plaintiff fails to engage with any of this. Many of her allegations are simply wrong. *Compare* FAC ¶ 86(j) ("The Choice Hotels Defendant set requirements for the hiring process used by franchisee and oversaw employee discipline processes and termination decisions") *with* FA at 13 ("You [Franchisee] are solely responsible for exercising ordinary business control over the Hotel, including personnel matters of Hotel employees and pricing of rooms and other services at your Hotel."). Even aside from these inaccuracies, many of the allegations are irrelevant—having nothing to do with trafficking, much less any of Plaintiff's own allegations—and instead relate only to Choice's efforts to protect its brand. *See, e.g.*, FAC ¶¶ 86(b); 86(f); 86(m). Still other allegations are so vague or general that they are entirely conclusory and amount to "mere recitations of the requirements for franchisor liability." *Red Roof*, 21 F.4th at 729; *see, e.g.*, FAC ¶¶ 85; 86(j); 86(w).

Taken together, these standards do not "establish that Choice operat[es] the [hotel] or control[s] its life safety systems"; "[r]ather, [the franchisee] operat[es] the [hotel] under the Rules and Regulations set forth by Choice." *Allen v. Greenville*

23

*Hotel Partners, Inc.*, 409 F. Supp. 2d 672, 677 (D.S.C. 2006); *see Allen v. Choice Hotels Int'l, Inc.*, 276 F. App'x 339, 343 (4th Cir. 2008) ("The mere terms of the Franchise Agreement do not establish that Choice exerted sufficient control over the operations of the hotel to create a duty.").

At base, Plaintiff's allegations do not reflect a "right to control the day-to-day operations" of this independently owned and operated hotel. *Red Roof*, 21 F.4th at 729. Instead, they merely relate to "a franchisor's control over uniformity and standardization across franchises," which are "insufficient to establish the level of domination that would render a franchisee's independence a fiction." *S.J.*, 473 F. Supp. 3d at 155 (citation and internal quotation marks omitted); *see Doe (K.B.) v. G6 Hosp., LLC,* No. 1:23-CV-2597-TWT, 2024 WL 4701891, at *4 (N.D. Ga. Nov. 5, 2024).[12] Rather, "'[t]he clear trend in the case law in other jurisdictions is that the quality and operational standards and inspection rights contained in a franchise agreement *do not* establish a franchisor's control or right of control over the franchisee sufficient to ground a claim for vicarious liability.'" *Allen,* 276 F. App'x at 343 (emphasis added) (quoting *Kerl v. Dennis Rasmussen, Inc.*, 273 Wis.2d 106, 126 (2004)).

### IV.  Dismissal Should be with Prejudice.

This litigation has gone through three rounds of either dismissal or, before the Maryland Court, transfer briefing. *See* Doc. Nos. 36 (Choice brief before

---

[12] *See also K.M. v. CPA Hotels of Atlanta, LLC*, No. 1:23-cv-190, 2023 WL 5747490, at *2 (N.D. Ga. Aug. 30, 2023); *H.G.*, 489 F. Supp. 3d at 708–09.

Maryland Court), 85 (first Choice brief before this Court). Even before this Court had an opportunity to weigh in, Plaintiff preemptively amended her pleading. *See* Doc. No. 111. As explained above, those amendments do not help her avoid dismissal and given that the large bulk of them relate to Plaintiff's interactions with her traffickers and hotel staff, it is clear that Plaintiff has no further allegations to level against Choice. *See* Doc. No. 111-2 at 11–13, 32–35, 38 (redline showing bulk of changes in FAC). In these circumstances, further amendment would be "futile," and dismissal with prejudice is warranted. *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020).

## CONCLUSION

For the reasons stated above, Choice respectfully requests that the Court dismiss Plaintiff's claims against Choice with prejudice.

Respectfully submitted this 8th day of January, 2026.

/s/ *Sara M. Turner*
Sara M. Turner (Lead Counsel)
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
420 20th Street North, Suite 1400
Birmingham, Alabama 35203
Phone: (205) 328-0480
smturner@bakerdonelson.com

Desislava K. Docheva, Esq.
Florida Bar No. 1010440
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
200 East Broward Blvd., Suite 2000
Fort Lauderdale, Florida 33301
Phone: (954) 768-1610
ddocheva@bakerdonelson.com

25

## LOCAL RULE 3.10(G) CERTIFICATION

The undersigned hereby certifies that counsel for Choice conferred with Plaintiff's counsel by email regarding this Motion. Plaintiff opposes this motion.

/s/ Sara Turner
Sara M. Turner (Pro Hac Vice)